696 A.2d 674

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JUAN CARLOS VILLAR, DEFENDANT-RESPONDENT.

Argued April 29, 1997—Decided July 17, 1997.

504

*Nicholas Ruggiero*, Assistant Prosecutor, argued the cause for appellant (*Robert W. Gluck*, Middlesex County Prosecutor, attorney).

*Steven D. Altman* argued the cause for respondent (*Benedict and Altman*, attorneys; *Mr. Altman* and *Doris E. McNeil*, on the briefs).

*Linda A. Rinaldi*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter Verniero*, Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

■ From the evidence, a jury could have found that defendant struck a woman in the face with a beer stein, causing her serious bodily injury. A beer stein meets the statutory definition of a weapon as an object readily capable of "inflicting serious bodily injury." *N.J.S.A.* 2C:39–1r. The principal issues are (1) whether defendant can be convicted under *N.J.S.A.* 2C:39–4d, possession of a weapon (the beer stein) for the unlawful purpose of striking the woman; and (2) whether, following a reversal for incorrect jury instructions, there may be a retrial of a charge of second-degree aggravated assault.

I

The jury heard the following evidence. On New Year's Eve, 1992, defendant, Juan Carlos Villar, was at TGI Friday's in Iselin. He was at the bar when Nancy Gollar and a friend arrived and sat next to him. Defendant had been drinking vodka before arriving at Friday's. He admits that he was drunk when the incident occurred and asserted a defense of intoxication to any charge of an intent to harm the victim.

Sometime after midnight, Villar decided to leave. He became irritated while waiting for his check. The bartender further irritated him when she removed his ashtray as he waited. With no ashtray, defendant threw a lit cigarette over the bar. According to defendant, Gollar slid another ashtray towards defendant saying, "Here, try this, you jerk." Defendant says that he intend-

ed only to splash his drink in her face, but might have struck her with the stein accidentally. Gollar claims that she intended no affront in sliding the ashtray over and was minding her own business when defendant, with his beer stein in hand, punched her in the face with a "very hard, very forceful" impact. (The object has also been referred to as a "goblet.") After the incident, defendant ran out of the bar, but was detained by a group of people outside the bar.

There was evidence that the blow split open Gollar's lip down to the muscle, broke a tooth, and left her covered with blood. The injury required seven stitches in Ms. Gollar's upper lip, root canal work, and repair work on a chipped tooth. She had "intense pain" in her mouth for weeks after the incident. Two years later, she still had throbbing in her gums. She may need more root canal work in the future. A scar on her upper lip is permanent.

A grand jury indicted defendant for second-degree aggravated assault, third-degree aggravated assault,[1] and third-degree possession of a weapon for an unlawful purpose. Defendant was denied admission to Pretrial Intervention (PTI).

The jury found defendant guilty of second-degree aggravated assault and third-degree possession of a weapon (the beer stein) for an unlawful purpose. The jury found defendant not guilty of third-degree aggravated assault. Instead, the jury found defendant guilty of simple assault, a disorderly persons offense that was charged as the lesser-included offense of the third-degree aggra-

---

[1] The Criminal Code provides the following states of mind for aggravated assault. Second-degree aggravated assault is defined as causing or attempting to cause, "purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly," serious bodily injury. *N.J.S.A.* 2C:12–1b(1). Third-degree aggravated assault is defined as "[a]ttempt[ing] to cause or purposely or knowingly caus[ing] bodily injury to another with a deadly weapon." *N.J.S.A.* 2C:12–1b(2). A new third-degree crime of causing or attempting to cause "significant bodily injury" was added in 1995. *N.J.S.A.* 2C:12–1b(7).

vated assault charge.[2] On the second-degree aggravated assault charge, involving bodily injury, the jury found that defendant had been recklessly indifferent to the value of human life but did not find that defendant acted purposely or knowingly. (The jury's verdict sheet is attached as Appendix A.) The trial court merged the simple assault conviction with the second-degree aggravated assault conviction and sentenced defendant to five years of imprisonment. The trial court sentenced defendant to a concurrent three years of imprisonment for possession of a weapon for an unlawful purpose.

The Appellate Division vacated the convictions for second-degree aggravated assault and possession of a weapon for an unlawful purpose. It left standing the simple assault conviction and remanded that for resentencing. We granted the State's petition for certification. 146 *N.J.* 570, 683 *A.2d* 1165 (1997). We also granted leave to the Attorney General to appear as *amicus curiae.*

## II

### A.

Complicating this case is its position at the intersection of two carefully structured grids of criminal responsibility. The first grid involves the regulation of criminal assault. In *State v. Sloane,* 111 *N.J.* 293, 544 *A.2d* 826 (1988), we explained that the Legislature has graded assaults for purposes of charging and sentencing. The gradations are based on a number of factors, such as the seriousness of the injury to the victim, the state of mind of the criminal actor, the status of the victim, and the use or not of certain forms of weapons. *Id.* at 296–97, 544 *A.2d* 826.

---

[2] There are three types of simple assault. The type at issue here is defined as "[n]egligently caus[ing] bodily injury to another with a deadly weapon." *N.J.S.A.* 2C:12–1a(2). Simple assault is a third-degree crime if bodily injury results and the victim is a member of a particular class, such as a law enforcement officer. *N.J.S.A.* 2C:12–1b(5).

The second grid involves the regulation of the criminal use and possession of weapons. Possession of certain weapons (such as a sawed-off shotgun) is *per se* unlawful. *See N.J.S.A.* 2C:39-3. Possession of other objects (such a pair of modified scissors or a box-cutter) may constitute unlawful possession under "circumstances not manifestly appropriate for [ ] lawful uses." *N.J.S.A.* 2C:39-5d; *State v. Kelly,* 118 *N.J.* 370, 571 *A.*2d 1286 (1990); *State v. Lee,* 96 *N.J.* 156, 475 *A.*2d 31 (1984). Possession of certain weapons (such as a handgun) may be unlawful if possessed without a license. *State v. Ingram,* 98 *N.J.* 489, 488 *A.*2d 545 (1985). Still other objects (such as a baseball bat) are benign in themselves but may become weapons depending on how the objects are used. *N.J.S.A.* 2C:39-4 makes possession of a weapon for an unlawful purpose a criminal offense. Possession of a weapon (except a firearm) for the purpose of using it unlawfully against persons or property is a third-degree offense. *N.J.S.A.* 2C:39-4d. The statutory framework is a "careful mix" that combines purely regulatory proscriptions with more serious crimes that require a level of culpability. *State v. Harmon,* 104 *N.J.* 189, 198, 516 *A.*2d 1047 (1986); *see also Lee, supra,* 96 *N.J.* at 160, 475 *A.*2d 31 (describing provisions as "carefully constructed").

In order to sustain a conviction under *N.J.S.A.* 2C:39-4d, the State must prove four facts beyond a reasonable doubt: (1) the item possessed was a weapon within the meaning of *N.J.S.A.* 2C:39-1r; (2) the defendant possessed the weapon with knowledge or awareness of control over the weapon; (3) the defendant's purpose or conscious objective was to use the weapon against the person or property of another; and (4) the defendant intended to use the weapon in a manner proscribed by law. *Harmon, supra,* 104 *N.J.* at 212, 516 *A.*2d 1047. The purpose to use a weapon unlawfully may be inferred from the circumstances. *State v. Petties,* 139 *N.J.* 310, 316, 654 *A.*2d 979 (1995). The offenses under Chapter 39 are directed at the intent to use weapons to commit crimes, and not merely to penalize possession *per se.*

*Harmon, supra,* 104 *N.J.* at 199, 516 *A.*2d 1047 (citing *State v. Green,* 62 *N.J.* 547, 555–56, 303 *A.*2d 312 (1973)).

A jury is not qualified to say without guidance which purposes for possessing a weapon are unlawful and which are not. Therefore, a jury instruction on a charge of possession of a weapon for an unlawful purpose must include an identification of the unlawful purpose or purposes suggested by the evidence and an instruction that the jury "may not convict based on their own notion of the unlawfulness of some other undescribed purpose." *State v. Jenkins,* 234 *N.J.Super.* 311, 316, 560 *A.*2d 1240 (App.Div. 1989). In addition, the trial judge should explain to the jury that the criminal purpose or state of mind may exist at whatever time the State claims that the possessory offense took place, and relate the specific unlawful purpose charge to the facts of the case. *Harmon, supra,* 104 *N.J.* at 210, 516 *A.*2d 1047.

### B.

The Appellate Division reasoned:

[D]efendant's conscious objective in possessing the glass was drinking, not hitting. He cannot be found guilty of possession with an unlawful purpose for the momentary flash between the possession of the glass for a lawful purpose and the alleged assault. As stated in *Harmon,* "[w]e are thus compelled by the fundamental precepts of the Code to interpret section 39–4 as applying only when an individual arms himself with the actual purpose of using the weapon against another in a criminal manner." *Harmon, supra,* 104 *N.J.* at 204, 516 *A.*2d 1047. There is no proof that defendant armed himself to assault Gollar; rather, the proofs indicate he hit her with what happened to be lawfully in his hand. The conviction must be reversed and defendant must be acquitted on this count.
[292 *N.J.Super.* at 331, 678 *A.*2d 1129.]

The State argues that this interpretation will, in effect, grant immunity to criminals who employ weapons in the commission of assaults. It will rarely be possible for the State to prove that the original purpose in possessing a weapon was unlawful. For example, one licensed to possess a gun lawfully would be immune from prosecution if the possessor had a change of mind and decided to use the gun to commit a crime. The original purpose was lawful. In the case of everyday objects, the State would be

effectively precluded from prosecuting, for possession for an unlawful purpose, those who assault with such weapons because the original use of an innocuous everyday object can always be deemed lawful.

*Harmon* did not hold that the State was required to prove that the original purpose for possessing a weapon was unlawful. It overreads *Harmon* to conclude that a person cannot be convicted of possession of a weapon for an unlawful purpose if the original purpose for possessing an object was lawful. We recently held, "[t]he State is not required to prove a defendant's original purpose" for possessing a weapon for a 39–4a conviction. *State v. Diaz*, 144 *N.J.* 628, 636, 677 *A.*2d 1120 (1996). The same principle applies to convictions under 39–4d. *Harmon* posed a subtle and complex problem. The defendant had anticipatorily armed himself with a BB gun (a handgun that required a permit) in the event that he was attacked by another. The State argued that Harmon could not argue that his purpose to carry the gun was lawful if the possession itself was unlawful. We described the issue as a "legal riddle." *Harmon, supra,* 104 *N.J.* at 196, 516 *A.*2d 1047. It was in the context of rebutting the State's argument that we stated that *N.J.S.A.* 2C:39–4a applies only when an individual is armed for the actual purpose of using the weapon against another in a criminal manner. Harmon asserted that he possessed the BB gun without intending to do harm to another. We held that he was entitled to present that defense to the jury. We could not "agree with the proposition that the jury can be forbidden to consider the defendant's purpose, after a certain continuum of time has passed, because [the defendant] originally took possession of the weapon before the danger became imminent. The criminal purpose or state of mind must exist at *whatever time* the State claims that the possessory offense took place." *Id.* at 210, 516 *A.*2d 1047 (emphasis added). We reiterated the point for emphasis:

if the accused's honest purpose in possessing and in continuing to possess a weapon is to use it for sport, precaution, or in a manner intended to cause no harm to another, then [the accused] may present that defense to the jury to counter the

charge that [the accused] is guilty of possession for an unlawful purpose, principles of justifiable use notwithstanding.

[*Id.* at 211, 516 *A*.2d 1047.]

In this case, Villar's original purpose in possessing the stein was lawful. Like Harmon, he may insist that his purpose was always lawful, but also, like Harmon, he may not escape responsibility if his purpose becomes unlawful. *See Id.* at 209–10, 516 *A*.2d 1047 (stating that the defendant could not employ deadly force in self defense unless reasonably necessary to protect against threat of death or serious bodily injury, but could be guilty of possessing a weapon for unlawful purpose if the defendant used deadly force in absence of such threat). To explain the concepts, we used the example of a homeowner who kept a golf club or bat under a bed in order to be able to repel an intruder. We asked rhetorically: "Would we ever deny a homeowner who kept a golf club or baseball bat under a bed to repel an intruder the opportunity to say that [the homeowner] never intended to use the potentially lethal weapon to harm anyone unless forced to by circumstances?" *Id.* at 210, 516 *A*.2d 1047. The answer is obviously no. Conversely, if that homeowner picked up the bat (or another household object, like a carving knife) for the purpose of assaulting a spouse, the homeowner should be prosecuted for the possession of the previously benign object for the unlawful purpose of inflicting bodily injury on another.

So too, when a bar patron turns from imbiber to assaulter, the patron is not free to obtain a weapon in order to inflict greater harm. It is for a jury to decide if the patron consciously possessed the weapon for the purpose of inflicting injury upon another. (We are certain that there would be little difficulty with the analysis if a beer bottle were broken in a "momentary flash" and were employed for the unlawful purpose of inflicting injury on another.) Offenders are not overpenalized in such circumstances. The possession charge will often merge with the completed offense. *Diaz, supra,* 144 *N.J.* 628, 677 *A*.2d 1120 (affirming merger

of possession for unlawful purpose with passion/provocation manslaughter); *State v. Best,* 70 *N.J.* 56, 356 *A.*2d 385 (1976).

The beer stein was initially used for its lawful purpose (drinking) and was an otherwise innocuous everyday object. Yet when defendant used it to strike the victim in the face, a jury could infer that his purpose was to commit an unlawful act with the stein. *See Petties, supra,* 139 *N.J.* 310, 654 *A.*2d 979. The State alleged that defendant intended to use the stein for the unlawful purpose in the moments before actually striking Gollar. The jury could have found that when defendant made the decision to use the stein to hit the victim, he no longer possessed the stein lawfully and had picked up the stein with the actual intent to use it for the unlawful purpose of striking Gollar.

A jury could thus find that the State established all four elements of possession of a weapon for an unlawful purpose under the *Harmon* test. (1) Once the beer stein ceased being used for a lawful purpose, because of its size and weight, it became a weapon capable of inflicting bodily injury. (2) Gollar and her companion testified that defendant picked up the stein to strike Gollar in the face, thus establishing his control over the object. (3) The jury could have found that Villar's purpose or conscious object was to strike Gollar. (4) The use of a beer stein to commit an assault on another is an act proscribed by law.

## III

The remaining issues on appeal are (1) whether the Appellate Division's reversal of the second-degree aggravated assault conviction because of improper jury instructions was correct; (2) whether the Appellate Division should thereafter have remanded the second-degree aggravated assault count for retrial; and (3) whether double jeopardy protections preclude retrial of the second-degree aggravated assault count.

Count One of the indictment charged that defendant

attempt[ed] to cause or did purposely or knowingly cause or under circumstances manifesting extreme indifference to the value of human life, did recklessly cause serious bodily injury to Nancy L. Gollar.

The jury found defendant guilty of recklessly causing serious bodily injury under circumstances manifesting extreme indifference to the value of human life, constituting second-degree aggravated assault.

Count Two of the indictment charged defendant with third-degree aggravated assault, alleging that he

purposely or knowingly cause[d] bodily injury to Nancy L. Gollar with a deadly weapon.

The jury acquitted defendant of third-degree aggravated assault, but found defendant guilty of negligently causing bodily injury with a deadly weapon, which was charged as a lesser-included offense of third-degree aggravated assault.

Defendant's primary argument before the Appellate Division was that it was inconsistent for the jury to find as a fact under Count One that he was reckless under circumstances manifesting extreme indifference to the value of human life and also to find as a fact under Count Two that he was negligent in causing bodily injury with a weapon. He argued that a single act established by a single set of facts should not give rise to two levels of culpability. Defendant also argued that it was inconsistent for the jury to find that the injuries constituted serious bodily injury as to Count One and only bodily injury as to Count Two.[3] (The use of the deadly

---

[3] The trial court's instructions on the seriousness of the injury generally tracked those of the Model Jury Charges. The charges reflect exceedingly subtle gradations. "Serious bodily injury" the court defined as injury "which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *See Model Jury Charges (Criminal)* § 2C:12–1b(1) (June 20, 1996). The court defined "bodily injury" as "physical pain, illness or any impairment of the physical condition." *See Model Jury Charges (Criminal)* § 2C:12–1b(2) (Oct. 17, 1988). "Significant bodily injury" (not charged here) is defined as "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses." *See Model Jury Charges (Criminal)* § 2C:12–1b(7) (June 20, 1996).

weapon does not in itself make the injury inherently serious. *Sloane, supra,* 111 *N.J.* at 298, 544 *A.*2d 826.)

Defendant further asserted that the only culpability alternative given to the jury on Count One was that of simple assault under 2C:12–1a(1), the purposeful, knowing, or reckless causing of bodily injury to another. Defendant argued that he was entitled to an instruction under Count One on the lesser-included offense of purposely or knowingly causing any form of bodily injury to the victim, whether serious or not, with a deadly weapon (third-degree aggravated assault). *N.J.S.A.* 2C:12–1b(2).

The Appellate Division, for purposes of its analysis, set forth the following ladder of liability under *N.J.S.A.* 2C:12 for the offenses charged against defendant:

| [DEGREE OF OFFENSE/ INJURY] | [STATE OF MIND] | [ATTENDANT CIRCUMSTANCE] |
|---|---|---|
| Second Degree <br> serious bodily injury | [–1b(1)] <br> that was knowing injury or purposeful [or reckless manifesting extreme indifference to the value of human life] | |
| Third Degree <br> bodily injury | [–1b(2)] <br> that was knowing or purposeful | with a deadly weapon |
| Fourth Degree <br> bodily injury | [–1b(3)] <br> that was reckless | with a deadly weapon |
| Disorderly person [Simple Assault] | [–1a(1)] | |
| bodily injury | that was purposeful, knowing or reckless | |
| bodily injury | [–1a(2)] <br> that was negligent | with a deadly weapon |

[292 *N.J.Super.* at 327, 678 *A.*2d 1129.]

The court reasoned that when a defendant is indicted for second-degree aggravated assault and the proofs show commission of the assault with a deadly weapon and the evidence requires that

other lesser-included assault charges be given, the court must instruct the jury that third-degree aggravated assault with a deadly weapon is a lesser-included offense of second-degree aggravated assault, whether or not committed with a weapon. *Id.* at 330, 678 *A.*2d 1129. Third-degree aggravated assault has as its lesser-included offense fourth-degree assault with a deadly weapon, which in turn has as its lesser-included offense negligent simple assault with a deadly weapon. *Ibid.* This sequence is necessary because these offenses "[differ] from the offense charged only in the respect that a less serious injury or risk of injury to the same person ... or a lesser kind of culpability suffices to establish its commission." *N.J.S.A.* 2C:1–8d(3).

The State does not disagree that third-degree aggravated assault with a deadly weapon is a lesser-included offense of second-degree aggravated assault, not involving the use of a weapon. The disagreement concerns the consequences of that conclusion.[4] The Appellate Division reasoned that because the jury acquitted defendant on the third-degree charge (knowing or purposeful inflicting of bodily injury with a deadly weapon), this lesser-included offense cannot be charged at retrial, thus hindering a fair retrial of the greater offense. 292 *N.J.Super.* at 332, 678 *A.*2d 1129.

The Appellate Division found that the true difficulty lay with the jury instructions. *Id.* at 326, 678 *A.*2d 1129. It concluded that but for the erroneous jury instructions on assault, the jury would have returned a verdict of guilty solely on the lesser-included offense of negligent simple assault with a deadly weapon. The Appellate Division believed it to be in the interest of justice that

_____

[4] In future cases involving assaults with weapons, courts should construct with counsel a sequence of the offenses to be charged. Because of the subtle factual complexities these cases present, when such a charge conference has been held, absent objection to the proposed charge, reviewing courts should hesitate to reverse convictions because of the charge. When, as here, lesser-includeds were charged as separate offenses, any error in not explaining lesser-included offenses to the jury is neutralized.

there be no retrial of the first count of second-degree aggravated assault and that judgment be entered solely on the negligent simple assault with a deadly weapon.

We disagree that the evidence supports only a verdict of negligent simple assault with a deadly weapon. The differing accounts of the incident can sustain a verdict of aggravated assault. According to Gollar and her companion, both were looking at defendant when he picked up the stein and, completely unprovoked, smashed it directly and with full force in the face of Gollar. On the basis of this testimony, a properly charged jury could find that defendant's conduct was knowing or purposeful or reckless under circumstances manifesting extreme indifference to the value of human life. A properly charged jury could have found that the victim's injuries constituted serious bodily injury as opposed to mere bodily injury. We realize that, because of the constitutional prohibition against double jeopardy, defendant cannot be recharged with or convicted of the third-degree aggravated assault.[5] However, at defendant's request, the jury could be charged with that offense as a lesser-included offense of second-degree aggravated assault and should the jury return a verdict of guilt on that count, defendant would stand acquitted. *See State v. Short*, 131 *N.J.* 47, 618 *A.*2d 316 (1993) (explaining how to charge lesser-included offenses of which a defendant may not be convicted because of statute of limitations). The parties have not raised any question concerning the disposition on remand of the disorderly-persons conviction. Presumably the same procedure could be followed, except that the disorderly person conviction would remain standing.

The verdicts on the three Counts reflected an attempt by the jury to sort out the charges rather than a fatal inconsistency. On Count One, defendant may indeed have been recklessly indif-

---

[5] The State does not dispute that it may not retry the charges of knowing or purposeful infliction of serious bodily injury (third-degree aggravated assault).

ferent to the value of human life in striking a forceful blow at an unsuspecting woman patron in a tavern quite aside from the use of any weapon. The jury may have found that Villar's use of the weapon to inflict injury was culpable but not to the same degree of culpability as his recklessness in injuring her. Finally, the jury may have found that Villar's unlawful purpose to use the beer stein was to strike a blow (an illegal act) but not to cause bodily injury.

The verdicts are not inconsistent because the elements of each of the charges differ. The jury seemed to work its way carefully through the complicated pattern of mental states in the law of assault. In point of fact, none of the jury findings on the charges against defendant negates an essential element of any other charge. In addition, the jury may have credited defendant's intoxication defense as to the charges of knowing or purposeful intent to inflict serious bodily injury, see N.J.S.A. 2C:2–8 (allowing evidence of intoxication to negate such states of mind), but not to negate the intent to use the stein to commit a minor battery. The trial court instructed the jury that it could take intoxication into account "in determining whether [defendant] . . . was incapable of acting either purposely or knowingly." We realize that these convictions arising from a brief episode on a New Year's Eve may have a devastating effect on defendant's life. Yet, we also realize that a jury could find that the episode had a devastating effect on the victim's life.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for retrial of the second-degree aggravated assault count. Consistent with this opinion and at the request of defendant, the trial court shall charge third-degree aggravated assault, fourth-degree aggravated assault, and negligent simple assault as lesser-included offenses of second-degree assault. We reinstate the conviction on third-degree pos-session of a weapon for an unlawful purpose. Sentencing shall await any further disposition of the case.

520

## APPENDIX A

State v. Juan Carlos Villar

Indictment No. 623–4–93

[Verdict Sheet—Retyped]

We, the jury, find the defendant, Juan Villar

Count 1(A)          GUILTY ____          NOT GUILTY  X ____

of the crime of Aggravated Assault by purposely attempting to cause serious bodily injury to Nancy Gollar on January 1, 1993.

Count 1(B)          GUILTY ____          NOT GUILTY  X ____

of the crime of Aggravated Assault by causing serious bodily injury to Nancy Gollar on January 1, 1993, purposely or knowingly

Count 1(C)          GUILTY  X ____          NOT GUILTY ____

of the crime of Aggravated Assault by causing serious bodily injury to Nancy Gollar on January 1, 1993, recklessly under circumstances manifesting extreme indifference to the value of human life.

Only if the answers to all of the above are NOT GUILTY will you consider whether or not the defendant is

GUILTY ____          NOT GUILTY ____

of the offense of Simple Assault by attempting to cause or by causing bodily injury to Nancy Gollar on January 1, 1993, purposely, knowing or recklessly

Count 2        GUILTY _____       NOT GUILTY  X

of the crime of Aggravated Assault by causing bodily injury to Nancy Gollar on January 1, 1993, purposely or knowingly, with a deadly weapon

Only if the answer to Count 2 above is NOT GUILTY will you consider whether or not the defendant is

               GUILTY  X      NOT GUILTY _____

of the offense of Simple Assault by negligently causing bodily injury to Nancy Gollar on January 1, 1993, with a deadly weapon

Count 3        GUILTY  X      NOT GUILTY _____

of the crime of knowingly possessing a beer glass on January 1, 1993, with a purpose to use it unlawfully against the person of another

*For reversal and remandment*—Chief Justice PORITZ, and Justices POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.