740 A.2d 697 (1999)
326 N.J. Super. 122
STATE of New Jersey, Plaintiff-Respondent,
v.
Daniel S. RICKS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1999.
Decided November 24, 1999.
*698 Ivelisse Torres, Public Defender, for defendant-appellant (Jodi L. Ferguson, Assistant Deputy Public Defender, of counsel and on the brief).
Glenn Berman, Middlesex County Prosecutor, for plaintiff-respondent (John N. Shaughnessy, Assistant Prosecutor, of counsel and on the brief).
Before Judges KING, PAUL G. LEVY and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This appeal requires us to address the question of whether charges of possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d, and unlawful possession of a weapon, N.J.S.A. 2C:39-5d, require the jury to find that a weapon introduced into evidence at trial is the specific weapon used in the crimes charged, which in this case included a robbery. We determine that the jury need not find that the weapon introduced into evidence is the actual weapon used in the charged offenses. As the jury was properly instructed in this regard, we affirm the convictions.
Defendant Daniel S. Ricks was charged with one count of first-degree armed robbery, N.J.S.A. 2C:15-1; one count of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d; and one count of third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4d. The indictment identified the weapon as "a razor blade." Ultimately, the jury convicted defendant of all charges. After denying the State's motion for an extended term and then merging the weapons charges into the armed robbery, the trial judge sentenced defendant to a term of twenty years in prison with a seven-year period of parole ineligibility.
We briefly recite the relevant facts. At approximately midnight on June 18, 1996, a male attacked the victim Santo Soto while Soto was returning home from a store. The attacker grabbed the gold chain from Soto's neck and cut Soto's left arm. Soto did not see the weapon, but the nature of the wound was consistent with a cut caused by a razor blade. After the attack, the victim, still bleeding, found two police officersOfficers Melendez and Dillonnear his home and told them in Spanish that he had been attacked by a black man who was wearing a white shirt, blue pants, and little ponytails in his hair, which Soto described in Spanish as "treensita." At the trial, Melendez translated "treensita" to mean that "the hair is twisted up and ... spiked." Soto described the ponytails on the robber's head as approximately two inches high.
*699 Dillon broadcast the suspect's description over the police radio. Approximately ten minutes later, Officer Joseph McDonald spotted defendant, who fit the radioed description, a block and a half away from Soto's home. McDonald patted defendant down and retrieved a box cutter. Defendant, without being questioned, told the officer, "there is no blood on that knife." The box cutter was not sent to a laboratory to be tested for blood residue because the officers believed it had been wiped clean. McDonald did not find a gold chain when he searched defendant.
McDonald then transported defendant to 334 Stockton Street, Soto's apartment building, where Soto was standing with Melendez and Dillon. When Soto spotted defendant, he started yelling that he wanted his chain back and tried to attack defendant. Defendant was then arrested and taken to police headquarters.
At trial, Melendez identified defendant and stated that when McDonald brought defendant to 334 Stockton Street, defendant was wearing a white tee shirt and blue sweat pants. She also described defendant's hair as having "little spikes" that were approximately one inch high on his head. Soto then identified defendant at trial as the man who attacked him.
Defendant did not testify at trial or present any witnesses.
On appeal, defendant raises three issues:
POINT I
THE TRIAL COURT'S ERRONEOUS ANSWER TO A QUESTION ASKED BY THE JURY REQUIRES A REVERSAL OF HIS CONVICTIONS. (Not Raised Below)
POINT II
SINCE IDENTIFICATION WAS THE CRITICAL ISSUE IN THIS CASE, THE TRIAL COURT'S FAILURE TO MOLD ITS INSTRUCTIONS TO THE EVIDENCE WAS REVERSIBLE ERROR. (Not Raised Below)
POINT III
THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE NECESSITATING REDUCTION
We first address the critical issue raised on this appeal by setting forth additional relevant facts. During the State's presentation of its case, it offered the box cutter which was found on defendant's person at the time of his apprehension into evidence as Exhibit S-4. At the conclusion of the trial, the trial judge instructed the jury as to the second count charging possession of a weapon for an unlawful purpose stating that, "Now, the first essential element that you must find is that S-4 was a weapon." The judge defined the term "weapon" and appropriately set forth the remaining portions of the weapons charge. While defining the term "possession," the trial judge alluded to a critical consideration. He noted that "a person may possess an item such as a razor blade, even though it was not physically on his person at [the] time of the arrest." (Emphasis added). The instruction also applied as well to the charge of possession of a weapon for an unlawful purpose.
During its deliberations, the jury submitted the following question to the trial judge: "Must we consider the exhibit marked S-4 [the box cutter] as a certain [sic] weapon described in Counts 2 and 3?" After consulting with counsel, the judge proceeded to respond to the jury's question as follows:
I think what you want to know is whether the State must prove in Counts 2 and 3 that it has got to be S-4 or can it be something similar to S-4. I think that is the question that you're asking and everybody is nodding their head. It is a very good question. My decision is that it can be either S-4 or it can be a razor blade similar to S-4. It doesn't have to be S-4 itself, but it has got to be one just like it. I think that is the question you wanted to know the answer to. Okay. And based upon when I say just *700 like it I mean a razor blade type knife type instrument.
The trial judge also reiterated to the jury that if it found defendant not guilty of Count 1 (armed robbery), it would have to find him not guilty of Counts 2 and 3 (weapons possession charges) "because under the circumstances of this case it would be inconsistent" to do otherwise. The judge also reemphasized that the mere possession of an item such as a box cutter is not a crime.
Defendant claims that the judge's response to the jury was error. We conclude that the trial judge properly charged the jury in response to its question, and the jury was not required to find that S-4 was the weapon actually used by defendant during the robbery of Soto.
Defense counsel did not object at trial to the judge's response to the jury's question. Thus, defendant must demonstrate that the judge's answer constituted plain error, such that it was "clearly capable of producing an unjust result." R. 2:10-2. However, "because charging errors are usually regarded as poor candidates for rehabilitation by harmless error treatment, the qualitative assessment that plain error analysis entails must be different when a charging error is asserted than when a less critical type of error is assigned." State v. Malloy, 324 N.J.Super. 525, 533, 736 A.2d 532 (App.Div.1999) (citation omitted).
Defendant argues that the jury was obligated to find that S-4 was, in fact, the weapon used in the robbery and failing that, defendant must be acquitted. Defendant's argument fails to consider that the criminal possession of a weapon is not determined at the time when defendant is apprehended but at the time the weapon is possessed or used in relation to the predicate criminal offense, in this case the robbery. State v. Petties, 139 N.J. 310, 315, 654 A.2d 979 (1995). While defendant's apprehension while in possession of a box cutter may be a relevant consideration for the jury's ultimate determination as to whether defendant committed the weapons offenses, that is only one factor which the jury may or must consider in determining whether defendant possessed a weapon at the time of the robbery. See State v. Blaine, 221 N.J.Super. 66, 70, 533 A.2d 980 (App.Div.1987) (holding that where an implement is of "an equivocal character," it may be used lawfully and unlawfully depending on the circumstances attending the possession); cf. State v. Riley, 306 N.J.Super. 141, 148-49, 703 A.2d 347 (App.Div.1997) (noting that possession of a pocket knife was not possession of a deadly weapon exposing defendant to a first-degree robbery charge where defendant allegedly pushed the victim, the victim never saw or knew of the knife and the knife was not used during the robbery).
For a weapon to be admissible at trial, the State need not show that the particular weapon offered in evidence is the one that was used in the crime. State v. Mayberry, 52 N.J. 413, 435, 245 A.2d 481 (1968) (finding no error in allowing the State to introduce into evidence a replica weapon similar to the one used in the crime), cert. denied, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). "Physical evidence found in the possession and control of a defendant in a criminal case may be received into evidence, subject to the usual rules of relevance, materiality and competency, the same as testimonial or other evidence." State v. Sinnott, 24 N.J. 408, 415, 132 A.2d 298 (1957). "Rather, the [State] need only show sufficient circumstances to justify an inference by the finder of fact that the particular weapon was likely to have been used in the commission of the crime charged." Commonwealth v. Spotz, 552 Pa. 499, 716 A.2d 580, 590 (1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999). A weapon found on defendant when he is arrested is admissible if some connection to the crime can be shown. People v. Jackson, 299 Ill.App.3d 323, 234 Ill.Dec. 250, 702 N.E.2d 590, 592 (1998) (holding *701 that a connection can be established where there is "(1) sufficient testimony to establish that a weapon was used, (2) substantial evidence the defendant participated in the crime, and (3) testimony that the weapon admitted was similar to the one used during the crime"). Here, it is clear that the weapon was properly admitted into evidence because the connection to the crime was established: the victim stated that he was cut with some sort of blade, the victim positively identified defendant both in and out of court, and the box cutter had the capability to cause the injuries sustained by the victim.
The model jury charge for a violation of N.J.S.A. 2C:39-4d suggests that a weapon need not be produced. The model charge instructs jurors:
In order for you to find the defendant guilty of this charge, the State has the burden of proving beyond a reasonable doubt each of the following four elements:
1. Exhibit ____ is a weapon (or, that there was a weapon)[1]
....
[Model Jury Charge (Criminal), "Possession of Weapon with a Purpose to Use It Unlawfully Against the Person or Property of Another" (1998).]
Whatever confusion may have arisen regarding this issue was resolved by the trial judge's supplemental instruction informing the jury that it need not find that S-4 was the weapon used in the offense, but it should find that it was a razor blade similar to S-4. That instruction was correct and focused the jury's attention not simply on the box cutter found on defendant, but also on any other razor blade defendant may have possessed at the time of the robbery.
Other jurisdictions addressing this or similar issues have reached consistent results. See, e.g., Parker v. State, 226 Ga. App. 462, 486 S.E.2d 687, 689 (1997) (finding no error where the victim had testified that defendant threatened her with a Swiss army knife and the court allowed into evidence a Swiss army knife that was found two weeks after defendant's arrest in a closet where he had been living at the time of the attack; "the jury would have been authorized to find either that the knife admitted was the one used in the attack, or that it was merely a similar knife"); cf. Chergi v. State, 234 Ga.App. 548, 507 S.E.2d 795, 797 (1998) (finding no error in defendant's convictions for armed robbery and weapons possession offenses where the court failed to charge the jury that the weapon presented at trial was only a replica of the weapon used in the crimes); State v. Hawkins, 702 So.2d 1121, 1124 (La.Ct.App.1997) (affirming defendant's convictions for weapons possession offenses and finding no error in the prosecution's use of a .38 caliber pistol in court to demonstrate the type of weapon defendant was charged with possessing because the actual weapon was never found), writ denied, 717 So.2d 230 (La.1998).
Additional instructions provide guidance to the jury in understanding the relationship of the possession of the weapon and the commission of the offense. It is defendant's use of the weapon at the time of the robbery which establishes the elements of the weapons offenses. A trial judge must instruct the jury as to the particular unlawful purpose with which they must find the defendant possessed the weapon. State v. Villar, 150 N.J. 503, 511, 696 A.2d 674 (1997).
A jury is not qualified to say without guidance which purposes for possessing a weapon are unlawful and which are not. Therefore, a jury instruction on a charge of possession of a weapon for an unlawful purpose must include an identification of the unlawful purpose or purposes suggested by the evidence and an *702 instruction that the jury "may not convict based on their own notion of the unlawfulness of some other undescribed purpose."
[Ibid. (quoting State v. Jenkins, 234 N.J.Super. 311, 316, 560 A.2d 1240 (App.Div.1989)).]
Additionally, "the trial judge should explain to the jury that the criminal purpose or state of mind may exist at whatever time the State claims that the possessory offense took place, and relate the specific unlawful purpose charge to the facts of the case." Ibid. The trial judge here complied with these mandates. He stated in his instruction:
The element of purpose to use a weapon unlawfully requires that you find that the defendant possessed a weapon with a conscious objective, design or specific intent to use it against another person ... in an unlawful manner as charged in the indictment and not for any other purpose. In this case the State contends that the defendant's unlawful purpose in possessing the weapon was to facilitate the robbery. That's what you have to decide. You have to find specifically that his unlawful purpose in having the weapon was to help him do the robbery. You must not consider your own notions of the unlawfulness of the defendant's purpose, but must consider whether the State has proven a specific unlawful purpose charge.
....
There are certain circumstances where you can possess a weapon and you want to use it that are lawful. The State has to prove that this was an unlawful purpose and what they claim to be the unlawful purpose was that he possessed it to help him in committing the robbery.
Although the jury must find that defendant used the weapon with the particular unlawful purpose alleged by the State, "the unlawful purpose[ ] ... may be inferred from the circumstances." Petties, supra, 139 N.J. at 316, 654 A.2d 979. The proofs establishing the robbery provide the necessary underpinnings for the weapons charges.
We believe, however, that it is not necessary to prove a defendant's possession of a weapon with intent to use it against a person unlawfully by evidence independent of the defendant's conduct during the commission of a greater crime. On the contrary, where a defendant uses a weapon unlawfully to commit a crime of violence, such as robbery, that conduct in itself provides the basis for an indictment charging the defendant with both robbery and possession of a weapon with intent to use it against a person unlawfully.
[People v. Perez, 45 N.Y.2d 204, 408 N.Y.S.2d 343, 380 N.E.2d 174, 176 (1978).]
See also People v. Sykes, 194 A.D.2d 502, 599 N.Y.S.2d 566, leave to appeal denied, 82 N.Y.2d 759, 603 N.Y.S.2d 1001, 624 N.E.2d 187 (1993).
We conclude that there is no necessity to prove that the actual exhibit was the weapon used in the offense, but a similar weapon may be found by the jury to have been possessed by a defendant at the time of the commission of the offense. In fact, whether the actual weapon is found or produced at trial is immaterial. Obviously, this finding must be consistent with the underlying indictment, see State v. Lopez, 276 N.J.Super. 296, 305-07, 647 A.2d 1351 (App.Div.) (holding that a first-degree robbery conviction based upon defendant's use of a knife was not inconsistent with an indictment that charged him with first degree robbery with a machine gun because "the kind of deadly weapon is not an essential element of the offense and thus need not be particularized in the indictment"), certif. denied, 139 N.J. 289, 654 A.2d 469 (1994), and there must be the attendant circumstances alluded to in State v. Blaine, supra, 221 N.J.Super. at 70, 533 A.2d 980. All of these considerations were present here.
*703 We briefly comment on the remaining issues raised by defendant. We are mindful of the admonition that trial judges must charge the jury on identification when it is a key issue in the case. State v. Green, 86 N.J. 281, 291, 430 A.2d 914 (1981).
It is well-established in this State that when identification is a critical issue in the case, the trial court is obligated to give the jury a discrete and specific instruction that provides appropriate guidelines to focus the jury's attention on how to analyze and consider the trustworthiness of eyewitness identification.
[State v. Cromedy, 158 N.J. 112, 128, 727 A.2d 457 (1999).]
See also State v. Edmonds, 293 N.J.Super. 113, 117-18, 679 A.2d 725 (App.Div.1996) (holding the Model Charge to be inadequate because the victim had identified one person as the assailant at the scene and a different person as the assailant at trial), certif. denied, 148 N.J. 459, 690 A.2d 606 (1997). We are satisfied that the trial judge's identification charge was comprehensive and placed the issue of defendant's identification squarely before the jury. While there was some dispute as to the nature of defendant's hair, the testimony as to his dress and Soto's reaction upon seeing him after the arrest were not disputed at trial and supported the reliability of Soto's in-court identification. In sum, the identification issue was more illusory than real. Cf. State v. Salaam, 225 N.J.Super. 66, 69-72, 541 A.2d 1075 (App. Div.1988) (finding no error in trial judge's failure to include a specific identification charge because the victim gave a specific description of the suspect, identified the suspect less than a half an hour later at the scene, and corroborating evidence of the crime was found on defendant).
Finally, we find no error in the sentence imposed by the trial judge. He properly assessed and weighed the aggravating and mitigating factors in imposing both the sentence and the parole disqualifier. We find no basis for our intervention.
Affirmed.
NOTES
[1] The Model Jury Charge for N.J.S.A. 2C:39-5d requires a finding that the particular object or exhibit is a weapon. Model Jury Charge (Criminal), "Unlawful Possession of a Weapon" (1988).