PS2-154                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3743
_____

JERMAINE GILKES,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A043-870-524)
Immigration Judge:  Honorable Margaret R. Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 6, 2015
Before:  AMBRO, VANASKIE and SLOVITER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 13, 2015)
_____

OPINION[*]
_____

PER CURIAM

---
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se petitioner Jermaine Gilkes petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. We will deny the petition.

I.

Gilkes is a native and citizen of Guyana who entered the United States in 1993, when he was 11 years old. He has resided in the United States as a legal permanent resident ("LPR") since 1995. In 2007, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), stating that Gilkes was in the United States without legal status and was inadmissible because he had been convicted of robbery. It appears that Gilkes did not appear before an immigration judge ("IJ") until January 2013, when he was in DHS detention. Gilkes contested removability, and the IJ terminated the proceedings without prejudice because the NTA had been improvidently issued due to the error regarding Gilkes' immigration status.

A second NTA was issued on January 25, 2013. The new NTA acknowledged Gilkes' status as an LPR, but charged him as removable for being convicted of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii), and a firearms offense, see 8 U.S.C. § 1227(a)(2)(C). These charges were based on Gilkes' alleged 2007 convictions in New Jersey state court for robbery and conspiracy (NTA Factual Allegation 5), his alleged 10-year sentence of imprisonment (NTA Factual Allegation 6), and his conviction for possession of a weapon for an unlawful purpose (NTA Factual Allegation 7). The IJ denied Gilkes' motion to terminate the proceedings based on the doctrines of res judicata

2

and collateral estoppel.

During a May 2013 hearing, Gilkes denied Factual Allegations 5 and 6, but he seemed to admit Factual Allegation 7. The IJ declined to sustain the charges of removability based on Factual Allegations 5 and 6 because DHS did not authenticate the record of conviction or the indictment as required by 8 C.F.R. § 1003.41. Then, after some dispute, the IJ determined that Gilkes did not intend to admit Factual Allegation 7 and allowed him to re-plead. In October 2013, Gilkes stated that he would neither admit nor deny Factual Allegation 7, so the IJ denied it on his behalf.

To establish Factual Allegation 7, DHS again submitted the record of conviction and the indictment, along with a declaration from an Enforcement Removal Assistant ("ERA"). The IJ rejected Gilkes' objections based on res judicata and collateral estoppel to the admission of these documents. The IJ also rejected Gilkes' objection concerning the documents' authentication, determining that the ERA's declaration set forth the chain of custody by which DHS obtained the documents, which laid an adequate foundation for their admission. The IJ then determined that Gilkes had pleaded guilty to possession of a weapon (a handgun) for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-4a, and had been sentenced to 10 years in prison for this offense. However, the IJ declined to sustain the charge of removability under § 1227(a)(2)(C), concluding that § 2C:39-4a's definition of "handgun" is "much broader" than the definition of "firearm" used for immigration purposes. (IJ Op. 10.)

The Government immediately submitted a Form I-261, which contained an additional charge of removability based on Gilkes' conviction under N.J. Stat. Ann. § 2C:39-4a. The Form I-261 charged Gilkes as removable for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(F). Under that section, a conviction constitutes an aggravated felony if it is a "crime of violence" as defined in 18 U.S.C. § 16, for which the term of imprisonment is at least one year. After rejecting Gilkes' objection to the lodging of the new charge, the IJ determined that this conviction did constitute a "crime of violence" under § 16. Accordingly, and because Gilkes' term of imprisonment for that conviction exceeded one year, the IJ determined that Gilkes was removable on this charge. Because the IJ also determined that the crime was "particularly serious," Gilkes was rendered ineligible for all relief except for deferral of removal under the Convention Against Torture ("CAT").

Gilkes' application for CAT relief asserted that he was likely to be tortured or killed in Guyana because he believed that the government of Guyana had authorized a vigilante group to crack down on crime. Gilkes introduced evidence that in 2004 his cousin was executed by the vigilante death squad for being an informant. Another of Gilkes' cousins, who had been a police officer in Guyana, immigrated to the United States in 2005 because he refused to be part of the death squad. Gilkes believes that he will be killed by the death squad if he returns to Guyana. He also believes that he will be targeted as a criminal deportee and that, upon arrival, he will be indefinitely detained and

tortured.  Gilkes' mother, testifying on his behalf, said that although Gilkes' cousin's killers have not been caught, she does not believe that the death squad still exists.  She does believe, however, that criminal deportees are blamed for the increase in crime in Guyana, and that if no one picks up Gilkes from the airport, he will be detained.

The IJ denied Gilkes' application for CAT relief, determining that he had not established that it was more likely than not that he would be tortured.  The IJ noted that, although conditions are poor and criminal deportees often have a difficult time readjusting to life in Guyana, there was no evidence that criminal deportees were tortured or routinely detained.  Additionally, even assuming that Gilkes' cousin had been murdered by the vigilante group, it was not relevant to Gilkes' claim, as he had testified that the murder occurred because his cousin was an informant, not a criminal deportee.  The evidence also suggested that the vigilante group no longer existed, and even if it did, the group targeted only gang members.

On August 7, 2014, the BIA adopted and affirmed the IJ's decision, specifically addressing the many arguments that Gilkes had raised on appeal, most of which involved procedural matters.  The BIA rejected Gilkes' arguments that collateral estoppel and res judicata prevented DHS from issuing a second NTA or from adding a new charge of removability.  The BIA then agreed that the IJ had properly determined that the records of Gilkes' conviction under N.J. Stat. Ann. § 2C:39-4a were properly authenticated within the meaning of 8 C.F.R. § 1003.41.  The BIA also agreed that Gilkes' conviction

constituted a crime of violence and was thus an aggravated felony. The BIA rejected

Gilkes' remaining arguments, and affirmed the IJ's determination that Gilkes did not

establish his eligibility for protection under the CAT.

Gilkes has now filed a petition for review, which the Government opposes and

seeks to dismiss for lack of jurisdiction.

II.

A.      Jurisdiction

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. §

1252. The Government correctly contends that, with the exception of constitutional

claims and questions of law, we lack jurisdiction over Gilkes' petition for review because

he was found to be removable as an aggravated felon. See 8 U.S.C. § 1252(a)(2)(C), (D).

However, the Government incorrectly contends that Gilkes has not raised any questions

of law or constitutional issues.

Gilkes challenges, among other things, the determination that his conviction

constitutes an aggravated felony, as well as the application of res judicata and collateral

estoppel to his case. These issues are questions of law over which the Court has

jurisdiction. See Restrepo v. Att'y Gen., 617 F.3d 787, 790 (3d Cir. 2010) (aggravated

felony); Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 248 (3d Cir.

2006) (res judicata); Cospito v. Att'y Gen., 539 F.3d 166, 171 (3d Cir. 2008) (per curiam)

(collateral estoppel).[1]  Accordingly, the Government's motion to dismiss is denied.

### B.  Res Judicata and Collateral Estoppel

Many of Gilkes' claims concern the BIA's rejection of his arguments as to the applicability of res judicata and collateral estoppel.  Res judicata, or claim preclusion, applies where the party invoking it establishes: "(1) a final judgment on the merits in a prior suit involving (2) the same parties . . . and (3) a subsequent suit based on the same cause of action."  Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010) (quotation marks omitted).  Res judicata "bars not only claims that were brought . . . , but also claims that could have been brought."  Id.  Collateral estoppel, or issue preclusion, applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Cospito, 539 F.3d at 171 (quotation marks omitted).  Although Gilkes correctly states that those doctrines do apply to agency decisions, see Mayorga v. Att'y Gen., 757 F.3d 126, 131 n.10 (3d Cir. 2014), they do not apply in his case.

Gilkes asserts that res judicata and collateral estoppel precluded DHS from issuing the second NTA.  The first NTA was dismissed without prejudice by the IJ after it was determined to be "improvidently issued" because it incorrectly identified Gilkes as being

---

[1] A constitutional or legal claim must be "colorable" to trigger this Court's jurisdiction. See Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010).  Although Gilkes' claims ultimately lack sufficient merit, they meet this threshold.

in the United States without legal status. See 8 C.F.R. § 1239.2(c) (providing for dismissal of NTA as improvidently issued, and stating that such a dismissal is without prejudice to the alien or DHS). Dismissal of the first NTA without prejudice did not constitute a "final adjudication on the merits" as required to trigger res judicata. Cf. Venuto v. Witco Corp., 117 F.3d 754, 759-61 (3d Cir. 1997) (holding that newly filed claims were not barred by res judicata where the dismissal of the previous action without prejudice was not "inadvertent"); see also Aguilar-Aguilar v. Napolitano, 700 F.3d 1238, 1243 (10th Cir. 2012) (explaining that the IJ's grant of DHS's motion to terminate removal proceedings did not constitute a final order of removal). Further, collateral estoppel did not preclude the issuance of the second NTA, as the only issue that was decided in the first proceeding was whether Gilkes was in the United States without legal status.

Gilkes also asserts that res judicata and collateral estoppel prohibited DHS from using his judgment of conviction and the indictment to prove his conviction under N.J. Stat. Ann. § 2C:39-4a (Factual Allegation 7) because that evidence had already been presented in an attempt to prove Factual Allegations 5 and 6. The IJ correctly explained that the argument was meritless because she "did not re-adjudicate an issue it had already decided but rather adjudicated the new issue of whether DHS could meet its burden to prove the truthfulness of factual allegation 7 based on the new evidence at Exhibit 5."

(IJ Op. 8.)[2]

Gilkes' argument that res judicata prohibited DHS from lodging an additional charge of removability in the Form I-261 also fails. The regulations permit DHS to lodge additional charges at any time during the removal proceedings, see 8 C.F.R. § 1240.10(e), as "there is no requirement that the DHS advance every conceivable basis for removability in the [NTA]." Park v. Att'y Gen., 472 F.3d 66, 73 (3d Cir. 2006) (quotation marks omitted).

## C.    Aggravated Felony

Gilkes asserts that his conviction under N.J. Stat. Ann. § 2C:39-4a is not an aggravated felony because it is not a crime of violence. The BIA determined that, under 18 U.S.C. § 16(b), a "crime of violence" is an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (BIA Op. 5 (quoting 18 U.S.C. § 16(b).) It also explained that, to sustain a conviction under N.J. Stat. Ann. § 2C:39-4a,

> the defendant must possess a firearm and intend to use it unlawfully against the person or property of another. As such, [Gilkes'] conviction necessarily involved an intent to use the firearm in his possession. We conclude that in the ordinary course of committing the offense, there is a substantial risk that violent physical force will be used, where an individual intends to use a firearm in his possession for an

---

[2] Gilkes also asserts that the judgment of conviction and the indictment were not properly authenticated the second time they were submitted by DHS. However, for the reasons explained by the IJ and BIA, this claim lacks merit. (See IJ Op. 7-9; BIA Op. 3-4.)

9

unlawful purpose.

(Id. (citation omitted).)

The statute under which Gilkes was convicted provides that "[a]ny person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree." N.J. Stat. Ann. § 2C:39-4a. It clearly does not cover non-intentional conduct, see State v. Villar, 696 A.2d 674, 677 (N.J. 1997), and the BIA properly concluded that, "where an individual intends to use a firearm in his possession for an unlawful purpose," "there is a substantial risk that violent physical force will be used." (BIA Op. 5.) See Henry v. Bureau of Immig. & Customs Enforcement, 493 F.3d 303, 307 (3d Cir. 2007) (holding that the New York crime of possessing a weapon "with intent to use the same unlawfully against another" constitutes a § 16(b) "crime of violence" because it involves "a substantial risk that the actor will intentionally use physical force in committing his crime"). Accordingly, the BIA did not err by determining that Gilkes' conviction constituted an aggravated felony.

### D. Due Process

Gilkes claims that his proceedings violated due process for several reasons. To succeed on his claims, Gilkes must show "(1) that he was prevented from reasonably presenting his case and (2) that substantial prejudice resulted." Fadiga v. Att'y Gen., 488 F.3d 142, 155 (3d Cir. 2007) (internal quotation marks omitted). Further, due process guarantees "factfinding based on a record produced before the decisionmaker and

10

disclosed to [the alien]," the right to "make arguments on [the alien's] own behalf," and the "right to an individualized determination of [the alien's] interests." Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005) (quotation marks omitted).

The IJ provided Gilkes every opportunity to litigate his claims and objections, granting several of his motions. And despite Gilkes' arguments, there is nothing in the record that reflects bias or improper conduct so as to support the conclusion that the IJ abandoned her role as a neutral fact-finder. See Wang v. Att'y Gen., 423 F.3d 260, 267-70 (3d Cir. 2005). Further, that Gilkes disagreed with the BIA's and IJ's decisions does not equate to a due process violation.

Neither does Gilkes succeed on his argument that that the BIA's review violated his due process rights. The BIA engaged in an in-depth analysis of Gilkes' arguments. It applied the proper standards of review and repeatedly cited to specific evidence and the IJ's analysis. See 8 C.F.R. § 1003.1(d)(3) (setting forth BIA's standards of review); Abdulai v. Ashcroft, 239 F.3d 542, 549-50 (3d Cir. 2001) (setting forth due process requirements).

### E. Application for CAT Relief

Finally, Gilkes asserts that the IJ erred by determining that his evidence was insufficient to establish his claim for CAT relief. As noted above, because Gilkes was found to be removable as an aggravated felon, we review only constitutional claims and questions of law, including "issues of application of law to fact, where the facts are

11

undisputed and not the subject of challenge." Kamara, 420 F.3d at 211 (quotation marks omitted). Here, while Gilkes alleges that the IJ failed to properly consider the evidence he submitted, most of his arguments challenge the determination that he is not likely to be tortured upon his return to Guyana—a factual finding over which we lack jurisdiction, as it does not implicate the legal issue of whether the potential mistreatment rises to the level of torture. See Kaplun v. Att'y Gen., 603 F.3d 260, 271-72 (3d Cir. 2010). However, to the extent that Gilkes does present a legal question, the IJ and BIA did not err in denying his application for relief, as there is no indication that the BIA or IJ improperly applied the law to the facts in the record. See Kamara, 420 F.3d at 211.

We therefore deny the petition for review.