791 A.2d 1124 (2002)
348 N.J. Super. 336
STATE of New Jersey, Plaintiff-Respondent,
v.
E.B., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 2002.
Decided March 7, 2002.
Alan L. Zegas, Chatham, argued the cause for appellant (Mr. Zegas and Sharon Bittner Kean, on the brief).
Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (David Samson, Attorney General, attorney; Ms. Bartolomey, of counsel and on the brief).
Before Judges PRESSLER, WEFING and PARRILLO.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Retried by jury following a mistrial resulting from jury deadlock, defendant E.B. was convicted of two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and one count of second-degree impairing the morals of a child, N.J.S.A. 2C:24-4(a). The victim was his youngest of three daughters, seven years old when the alleged sexual abuse took place and nine years old when she testified. Two additional counts of the indictment alleging second-degree sexual assault and fourth-degree endangering involving another child, were severed. Defendant, protesting his innocence, refused to submit to evaluation by the Adult Diagnostic and *1125 Treatment Center. Accordingly, he was sentenced to state prison terms: consecutive terms of twenty years on each of the first-degree convictions, each with a ten-year parole ineligibility term, and a concurrent ten-year term subject to five years of parole ineligibility on the second-degree conviction. Appropriate statutory penalties were also imposed. Defendant appeals. We reverse and remand for a new trial.
As is not untypical in cases of this kind, the proofs against defendant consisted solely of the charges made against him by the victim. There was no real corroboration, and defendant, who testified on his own behalf, vehemently denied them. Ultimately, the issue was simply one of credibility as between father and daughter. The jury heard the child's version five times, four times on the State's case. At least some of her allegations were repeated by the testimony of the detective who conducted a videotape-recorded interview of the child when she first made the charges. The jury also viewed the videotape-recorded interview and heard, in addition, the child's testimony. The physician who examined the child several days after the charges were made and who found no physical corroboration thereof repeated the child's allegations as part of the medical history she took. Finally, the child's mother, called as a witness by defendant, obviously hostile to defendant but perhaps not technically so, testified to what the child had told her. The child's testimony was admitted after a finding that she was a competent witness understanding the difference between truth and falsehood. The physician's testimony was admitted pursuant to N.J.R.E. 803(c)(4) (statements made for purposes of medical diagnosis or treatment). The hearsay and prior consistent statement of the child were admitted pursuant to N.J.R.E. 803(c)(27) (statements by a child relating to a sexual offense). Against these multiple repetitions was only defendant's denial. It is particularly in this context that we have concluded that defendant's right to a fair trial was unduly prejudiced by the judge's exclusion of testimony tending to corroborate a motive for what defendant claimed to be an invention and fabrication of sexual abuse where none existed. We are also constrained to note at the outset that we are extremely loathe to subject the child to yet another trial. But we are persuaded that a wrongful conviction of the acts here alleged is at least as intolerable as the acts themselves. And for the reasons we hereafter set out, we do not have sufficient confidence in the fairness of this trial simply to affirm.
The background of the family dynamics is relatively undisputed. E.B. and K.B. were married in 1985. Their daughter Anne[1] was born in 1986, their daughter Beth in 1988, and their daughter Carol in December 1989. They separated in mid-1991. K.B. was then pregnant with their son and youngest child, Donald, who was born after the separation. E.B. and K.B. were ultimately divorced. Their relationship both before and after the divorce was apparently extremely bitter, acrimonious, and hostile. From the time of the separation, custody and parenting time had been in frequent controversy. For some period of time, defendant's parenting time had been suspended altogether and for some period of time it had been supervised. The record does not disclose the precise reasons therefor although it is at least inferable that K.B. was desirous of no or limited contact between E.B. and the children. *1126 In any event, the record does reveal that for some time, perhaps a year or so prior to Carol's making of these charges, parenting time had been resumed. Defendant had the children every other weekend. In the week following weekend visitation, he also had the children on Thursday afternoon and in the week following the other weekend, he had the children on Monday. At that time, defendant was living in a small two-room apartment. It appears that at various prior times following the separation, he had had no fixed home of his own but various makeshift arrangements.
The immediate events leading up the charges occurred in 1997. In January of that year, K.B. filed a post-judgment motion in the matrimonial action seeking, among other relief, the elimination of the weekday parenting time on the ground that it unreasonably interfered with the children's ability to participate in extra-curricular activities. That motion was granted, apparently on the papers, and later in the spring, in May 1997, defendant unsuccessfully sought reconsideration. In February 1997, the school the three girls attended offered a child-abuse program, known by the acronym CAP, to all grades, including Carol's first grade class. The essence of the program was to encourage children to tell a trusted adult about conduct of others that made them feel uncomfortable. Virtually immediately following this program, the family had contact with the Division of Youth and Family Services (DYFS), as well as a second DYFS contact in April 1997. The contact was with a DYFS worker, Heidi Zorde. The jury did not hear any testimony regarding Zorde's communication with the children or the action she took based thereon or the substance of the complaints made to DYFS since Zorde's testimony was excluded following the voir dire proffer.
This is the substance of the proffer. According to Zorde, she received a complaint from Anne, the oldest girl. Anne's complaint was that she had been made to feel uncomfortable by her father, E.B., who had tickled her. Zorde interviewed all three girls separately at school and Donald at home. She concluded that nothing other than horseplay had been involved and concluded that a charge of abuse was unsubstantiated. The April episode involved an event that took place at the home of defendant's girlfriend, who has two children of the same ages as two of his, and apparently a fair amount of defendant's parenting time was spent at her home, including weekend overnights. There was apparently a game played in the backyard with bamboo sticks, and Anne had been struck on the hand by a bamboo stick thrown by defendant. Again Zorde, after another interview with the girls, concluded that that complaint did not constitute abuse, and again found it to be unsubstantiated. The significance of the proffer, as we see it, lay in Zorde's testimony respecting the girls' attitude towards their father. According to Zorde, each of the girls, including Carol, told her that they did not want to see their father and that they knew that if charges of abuse had been sustained they would not have to see him again. Zorde also testified that Anne expressed her disappointment at DYFS's inability to "help her." Although Carol was thus interviewed by Zorde twice, once in February and once in April, she made no mention of her father's alleged abuse of her, which she later claimed to have been ongoing for some months at this time. We also note that by the time of this proffer, Carol had herself clearly testified that she did not like seeing her father. Aside from the abuse claims, she said the visits were boring; he disciplined the children by spanking; he didn't let them watch television; and he made *1127 them do their homework. Finally, we also point out that Carol, at least in her videotaped interview, made clear her awareness of the long-term hostility between her parents.
We come now to the charges and the weekend of July 5, 1997. Defendant picked up the children for visitation on Saturday morning. He was initially to have had the children for a week, but had told K.B. on the previous Thursday that he would be unable to do so and would return them Monday morning. K.B., so she testified, was annoyed and angry at this change of plan since she had to rearrange for child care for that week. According to her testimony, following their return to her on Monday morning, Carol was visibly upset and finally, on Wednesday evening, July 9, told her what was troubling her, namely the specific actions of her father that made her feel uncomfortable. K.B. reported the conversation to the prosecutor's office, and the next day, she, the four children, and her boyfriend whom she later married saw Detective Roy Aycock. His videotaped interview with Carol took place that day.
According to Carol, and as she also testified at trial, her father's abuse of her had been going on, from time to time, for about a year. She described this abuse as his "licking her private" or "licking her vagina," "rubbing his private against my private," and, on one occasion, requiring her to "lick his private." These episodes, of which she was able to recall several specific ones at trial, took place at night, at various locations in the apartment. She recalled his having carried her to his bed in his bedroom or to the bathroom. She recalled that he took her to the bathroom where, she said, he held her up on the towel rack. And she recalled, on that last weekend before her revelation, that he had come into the bedroom she shared with her three siblings, lying down next to her on the bed she slept in with her two sisters and abusing her in the described fashion while the two older girls were sleeping, as was her brother, who slept on a cot next to the girls' bed.
Following the interview, Carol was examined by a pediatrician, specializing in child abuse cases. Although she found some redness in Carol's hymenal area, she could not attribute that finding to the abuse Carol alleged although she concluded that the redness was not inconsistent with such abuse. The pediatrician also testified that while she "was not convinced," she referred Carol for counseling since therapy was indicated whether or not the abuse had actually taken place.
As we have pointed out defendant testified, absolutely denying the charges and attributing them to the maliciously motivated actions of his former wife. The jury evidently believed the child and found him guilty as charged.
In challenging the judgment of conviction, defendant raises the following issues:
I. DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS, TO COMPULSORY PROCESS, TO CONFRONT WITNESSES AND TO A FAIR TRIAL WERE VIOLATED BY THE TRIAL COURT'S REFUSAL TO PERMIT DEFENDANT TO OFFER EVIDENCE CONCERNING THE FAMILY'S HISTORY WITH THE DIVISION OF YOUTH AND FAMILY SERVICES AND TO CALL WITNESSES WHO HAD RELEVANT TESTIMONY TO OFFER NEGATING DEFENDANT'S GUILT.
II. DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL WERE VIOLATED BY THE TRIAL *1128 COURT'S FAILURE TO EXCUSE JUROR NUMBER 8 AND TO VOIR DIRE THE REMAINING JURORS.
III. DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL WERE VIOLATED BY THE TESTIMONY OF DETECTIVE ROY AYCOCK.
IV. IN VIOLATION OF DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL THE TRIAL COURT PERMITTED TWO WITNESSES TO GIVE FRESH COMPLAINT TESTIMONY WITHOUT FIRST HOLDING A HEARING. THIS ERROR WAS COMPOUNDED BY THE TRIAL COURT'S FAILURE TO GIVE THE JURY A LIMITING INSTRUCTION REGARDING THE TESTIMONY.
V. THE TRIAL COURT ERRED IN ADMITTING THE VIDEOTAPED STATEMENT OF H.B. CONTRARY TO DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS, TO CONFRONTATION AND TO A FAIR TRIAL.
VI. DEFENDANT WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL REQUIRING A REVERSAL OF HIS CONVICTION.
A. Defense Counsel's Failure To Request A Michael's Hearing.
B. Defense Counsel's Failure To Object To Highly Prejudicial Fresh Complaint Testimony.
C. More Instances Of Defense Counsel's Failure To Object To Highly Prejudicial Inadmissible Testimony.
D. Defense Counsel's Failure To Make A Timely Motion For H.B.'s Psychological And Medical Records And To Have Her Submit To An Independent Psychological Evaluation.
VII. FEDERAL AND STATE DUE PROCESS REQUIREMENTS, AS WELL AS THE CANONS OF JUDICIAL ETHICS SHOULD HAVE CAUSED THE TRIAL COURT JUDGE WHO PRESIDED OVER THE [DEFENDANT'S] MATRIMONIAL PROCEEDINGS TO RECUSE HIMSELF, PARTICULARLY WHERE DEFENDANT WAS REPRESENTING HIMSELF PRO SE.
VIII. IN VIOLATION OF DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS THE TRIAL COURT FAILED TO APPROPRIATELY WEIGH THE STATUTORY AGGRAVATING AND MITIGATING FACTORS, IMPOSED AN EXCESSIVE SENTENCE AND INAPPROPRIATELY IMPOSED CONSECUTIVE SENTENCES, NOT WARRANTED BY THE FACTS OR BY THE LAW.
IX. IN VIOLATION OF DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL, THE TRIAL COURT MADE A FINDING THAT DEFENDANT IS A REPETITIVE AND COMPULSIVE *1129 SEX OFFENDER WITHOUT AFFORDING HIM A HEARING.
We are satisfied that there is merit in the challenge to the exclusion of Zorde's testimony. Before addressing that issue, we point out that her testimony was the only proffer made at trial regarding the family's history with D.Y.F.S. Defendant raises a much broader issue on appeal, suggesting that during the years following the couple's separation, K.B. had made numerous complaints to D.Y.F.S., and that while those complaints were also found to be unsubstantiated, they demonstrated both a relevant pattern of behavior by the mother and the subjection of the children to repeated situations in which they were their father's accusers. Our review of the trial record, however, fails to show any other D.Y.F.S. proffer and we cannot, therefore, consider any other asserted evidential exclusion. We note, however, that we also make no comment as to any additional proffer that may be made on retrial.
Zorde's testimony was excluded based on the judge's ruling that it was not relevant and that even if it were, "the prejudice, the necessity to go through and have testimony as to all of the underlying fact would be so time-consuming and it would be unnecessary. I'm not going to permit that testimony." At this point, we note that the original basis of the proffer was the suggestion that during the course of the interviews, Zorde, by the nature of her interrogation, might herself have inadvertently planted the idea of sexual abuse in Carol's mind and might even have suggested the acts Carol ultimately charged him with. It became clear during the proffer, however, that there was no sexual content at all during the interviews and did not need to be. Defense counsel then urged admission of the testimony on the ground "that it goes to the core of the State's case in that it gives ... [Carol] a motive to lie." We agree.
We are aware that the trial judge is accorded broad discretion in determining whether or not to admit evidence alleged to be relevant and has, as well, broad discretion in determining that even relevant evidence should be excluded if its probative value is outweighed by undue prejudice or undue delay. See N.J.R.E. 403. See also State v. McDougald, 120 N.J. 523, 577-578, 577 A.2d 419 (1990). Consequently, the trial court's ruling in this regard is entitled to deference unless it is a clear error of judgment or so wide of the mark that a manifest denial of justice results. See, e.g., State v. Koedatich, 112 N.J. 225, 313, 548 A.2d 939 (1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L. Ed.2d 803 (1989); State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982); State v. Swint, 328 N.J.Super. 236, 253, 745 A.2d 570 (App.Div.), certif. denied, 165 N.J. 492, 758 A.2d 651 (2000). The presumption, however, lies with admitting relevant evidence. Thus the factors favoring exclusion must substantially outweigh the probative value of the contested evidence. See, e.g., State v. Morton, 155 N.J. 383, 453, 715 A.2d 228 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L. Ed.2d 306 (2001). Nevertheless, relevant evidence is properly excludable under the "undue prejudice" rubric of the rule where its probative value "is so significantly outweighed by [its] inflammatory potential as to have a probable capacity" to prejudice the jury. State v. Thompson, 59 N.J. 396, 421, 283 A.2d 513 (1971).
To begin with we have no doubt of the relevance of Zorde's testimony. This was a case based on credibility alone. Certainly the desire of the children, particularly Carol, not to see her father and her understanding, before she made these charges, that substantiated charges of *1130 abuse would relieve her of the necessity of seeing him, could have constituted strong motivation to invent or fabricate. Of course, that testimony cuts both ways. A jury would certainly be justified in concluding that the real reason Carol did not want to see her father was precisely because of the abuse. The jury could also, however, conclude to the contrary. The point of course is that defendant had a right to have the jury evaluate that motive testimony since it could have provided the jury with a credibility-impeaching inference. Moreover, we see no basis at all for concluding that admission of that relevant evidence would have unduly delayed or prejudiced the trial.
We find the exclusion of Zorde's testimony particularly egregious in view of the evidential consequence of N.J.R.E. 803(c)(27) of permitting the repeated admission of the child's extra-judicial statements even where the child herself is fully competent to testify and does testify. We understand the significant interests that led to the adoption of N.J.R.E. 803(c)(27) and the attempt of that rule to effect a reasonable balance between the State's probative needs in child abuse cases and the defendant's right to confrontation and basic procedural due process. See generally State v. D.R., 109 N.J. 348, 537 A.2d 667 (1988). And see State v. D.G., 157 N.J. 112, 123-124, 723 A.2d 588 (1999). We see no demonstration here of any violation of that rule in terms of reliability findings or the mandated production of the child herself. Nevertheless we cannot ignore the extra weight which a jury might well be inclined to give a story heard five times in different forms, by different witnesses, and in different modes as opposed to a denial heard only once from a single witness.[2] We are persuaded that that circumstance compels at least a modicum of compensatory liberality to defendant in the presentation of his proofs. Certainly, evidence as probative of motive as Zorde's should not have been excluded. We appreciate the trial judge's solicitousness of the child victim. Her ordeal has been a terrible one, and, as we have said, we are indeed loathe to have to put her through the ordeal of yet another trial. But on the other hand, this is a criminal trial of signal importance to the defendant. He must be accorded a full and fair opportunity to defend himself.
Because we have concluded that there must be a retrial of the charges, we do not address those challenges by defendant that are mooted by that event, including the failure of the trial court to excuse juror number 8, the alleged ineffectiveness of trial counsel, the presiding over this trial by the judge who presided over defendant's matrimonial proceedings, and sentencing issues.
We reject the issues defendant raises challenging the admission of hearsay and the videotaped interview. N.J.R.E. 803(c)(27), as interpreted by State v. D.G., supra, 157 N.J. 112, 723 A.2d 588, permits it in principle. We do not, however, foreclose defendant from making any discrete objection he might have to any of the evidence on the retrial.
Finally, we reject defendant's fresh-complaint objections. See generally State v. Hill, 121 N.J. 150, 578 A.2d 370 (1990). As we view it, N.J.R.E. 803(c)(27) constitutes an exception to the fresh-complaint *1131 rule when child sexual-abuse allegations are involved, and we read State v. D.G. as constituting N.J.R.E. 803(c)(27) as an exception to the prior consistent statement rule of N.J.R.E. 607 as well.
The judgment of conviction is reversed, and we remand for a new trial.
NOTES
[1] The names ascribed to the children of E.B. and K.B. are all fictitious to protect their anonymity.
[2] We note that in its 1998 report, the Supreme Court Committee on the Rules of Evidence, in recognition of the danger of multiple retellings, recommended deletion of N.J.R.E. 803(c)(27) in its present form, to be replaced by a rule excluding hearsay and evidence of prior consistent statements in those cases where the child victim is able to give "full and cogent" testimony. See Committee Report, 151 N.J.L.J. 729-730 (1998). This proposal was not adopted.