**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0359-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

R.J.M.,

    Defendant-Appellant.

_____

        Argued June 5, 2018 – Decided July 31, 2018

        Before Judges Fisher, Sumners, and Natali.

        On appeal from Superior Court of New Jersey,
        Law Division, Gloucester County, Indictment
        No. 11-08-0763.

        Daniel S. Rockoff, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender, attorney;
        Daniel S. Rockoff, of counsel and on the
        briefs).

        Douglas B. Pagenkopf, Assistant Prosecutor,
        argued the cause for respondent (Charles A.
        Fiore, Gloucester County Prosecutor,
        attorney; Douglas B. Pagenkopf, on the brief).

PER CURIAM

An indictment charged defendant R.J.M. with three offenses: (1) first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three). A jury acquitted defendant on count two but was unable to reach a verdict on counts one and three. The State retried defendant and a second jury convicted him on those counts. The trial court sentenced defendant to a sixteen-year prison term for count one, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a four-year concurrent prison term for count three. Defendant was also sentenced to five years mandatory parole supervision and parole supervision for life. Defendant appeals his conviction, sentence, and various pre-trial and trial rulings. He argues:

> POINT I
>
> BECAUSE A POLICE INTERROGATOR IGNORED [DEFENDANT]'S UNAMBIGUOUS REQUEST FOR COUNSEL, THIS COURT MUST REVERSE THE DENIAL OF THE MOTION TO SUPPRESS [DEFENDANT]'S STATEMENT. U.S. Const., AMENDS. V, XIV.
>
> POINT II
>
> THIS COURT MUST ALSO REVERSE THE DENIAL OF THE MOTION TO SUPPRESS [DEFENDANT]'S STATEMENT FOR REASONS RELATED TO INTERROGATORS' CONFRONTATION OF [DEFENDANT] WITH A POLYGRAPH. U.S. Const., AMENDS. V, XIV.

A.　[Defendant]　did　not intelligently waive his right to silence before he took the polygraph.

B. Interrogators coerced unreliable responses from [Defendant] only by confronting him with a fabrication of scientifically-certain proof of guilt, whereupon [Defendant] tried to reconcile his own inconsistent memory with that pseudoscientific fabrication.

C. The trial court's so-called "cure" - admitting [Defendant]'s statement while hiding from the jury how interrogators used a polygraph to elicit the statement - was totally inadequate, as it left [Defendant] with an unacceptably prejudicial dilemma.

POINT III

THE COURT ERRED BY DENYING [DEFENDANT]'S REQUEST FOR A SECOND-DEGREE N.J.S.A. 2C:14-2B CHARGE AS A LESSER ALTERNATIVE TO THE FIRST-DEGREE N.J.S.A. 2C:14-2A(l) CHARGE. U.S. Const., AMENDS. V, XIV; N.J. Const., ART. I, ¶¶ 1, 9, 10.

POINT IV

THE CUMULATIVE PREJUDICE OF REPETITIOUS OUT-OF-COURT HEARSAY ADMITTED PURSUANT TO N.J.R.E. 803(C)(27) AND N.J.R.E. 803(C)(4) OVER THE DEFENDANT'S OBJECTIONS DENIED DEFENDANT A FAIR TRIAL. U.S. Const., AMENDS. V, XIV; N.J. Const., ART. I, ¶¶ 1, 9, 10.

POINT V

AFTER THE FIRST JURY'S VERDICT, THE DOCTRINE OF COLLATERAL ESTOPPEL, ALSO KNOWN AS ISSUE PRECLUSION, BARRED THE STATE FROM RE-ARGUING

AT THE SECOND TRIAL THAT [DEFENDANT] ACTED PURPOSELY. THE STATE'S UNFAIR REPETITION OF THIS CLAIM, WHICH THE STATE HAD ALREADY LITIGATED AND LOST AGAINST [DEFENDANT] AT THE FIRST TRIAL, UNFAIRLY DILUTED [DEFENDANT]'S DEFENSE THAT ANY IMPROPER CONTACT HAD BEEN AN ACCIDENT. U.S. CONST., AMENDS. V, XIV; N.J. Const., ART. I, ¶¶ 1, 9, 10.

POINT VI

THIS MATTER SHOULD BE REMANDED FOR RESENTENCING, BECAUSE THE COURT FOUND IMPROPER AGGRAVATING FACTORS, AND FAILED TO FIND RELEVANT MITIGATING FACTORS.

After a thorough review of the record, we conclude that defendant did not invoke his right to counsel and, thus, his subsequent inculpatory statements were appropriately admitted by the trial court. We also disagree with defendant's claims that he did not intelligently and voluntarily waive his Miranda[1] rights and we find no error in the trial court's redaction of the recorded interrogation. We conclude, however, that the trial court erred in refusing to charge the jury on the lesser-included offense of second-degree sexual assault. We find no error with the trial court's evidentiary rulings with certain exceptions to be addressed on remand, and no merit to the State's collateral estoppel argument. Accordingly, we affirm in part, reverse in part and remand.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

I.

Defendant's wife ran a daycare center out of her home that J.C., the victim, began attending when he was a one-year-old child. Approximately three years later, defendant took a disability leave from his job and was at home more frequently during the day. Defendant's wife claimed that despite his increased presence in the home, defendant had no involvement with the daycare center's business but acknowledged that he interacted with J.C. occasionally such as tickling him and blowing "raspberries" on his stomach.

When J.C. was four, he told his father that "[defendant] bit my peepee and it hurt," a statement he repeated to his mother. The next day, J.C.'s parents took him to the police station where a detective conducted a recorded interview. Although J.C. did not repeat the allegations to the detective, when the detective left the room J.C. repeated the statement to his mother while the camera was still active. J.C. also repeated the allegation to a child abuse pediatrician who performed a physical examination. At both the first and second trials, J.C. testified that defendant touched him with his hands, not his mouth.

When defendant was questioned at the police station the next day, he was read his Miranda rights and repeatedly proclaimed his innocence during the five-hour interrogation. During the first

portion of his interrogation, the detectives asked defendant about taking a polygraph exam and he indicated that although "nervous" he "should do well" on it. After agreeing to the polygraph exam, defendant spoke to a different interrogator from the State Police polygraph unit. According to the trial court, after it reviewed the videotaped interrogation, this discussion occurred as the detective set up the polygraph equipment:

> Detective: Okay . . . I can't just hook you up and start asking you questions, I have to do an interview beforehand, I have to get basic information that you've probably already given to the detectives, and I apologize if it's redundant . . . [B]ut before we start doing that, I have to . . . read you your Miranda rights, I know they already [did] it to you?
>
> Defendant: Mmm-mmm.
>
> Detective: Okay, I have to do that again, just because my department requires it, and it's also a polygraph consent form. You know polygraph is voluntary?
>
> Defendant: Mmm-mmm.
>
> Detective: Okay, nobody can force you to take it.
>
> Defendant: Right.
>
> Detective: Okay, so I'm gonna read this to you and get this out of the way and then we'll go from there, because I have to ask you questions. . . .
>
> Defendant: My one, one of my main concerns, I, I'm wondering, I want to take [the

polygraph exam] because, I, I, know I didn't do anything. . . .

Detective: Uh-huh.

Defendant: But, I mean, I don't know if I have to have a lawyer?

Detective: You wanna what?

Defendant: A lawyer.

Detective: That's up to you, I can't, I can't give you any kind of advice regarding that, I mean if you didn't do anything, if you did nothing wrong, um, you take the polygraph test, you clear your name from this case, and you move on.

Defendant: Okay.

Detective: If you think you need a lawyer, if you decide you want a lawyer, then. . . .

Defendant: What is that, I don't think I need a lawyer . . . but . . . I mean. . . .

Detective: If you think you need a lawyer . . . . if you . . .

Defendant: I feel, I, I don't want to okay to something that. . . .

Detective: If you want a lawyer, then that's something that you'll have to tell me and then I'm not allowed to talk to you.

Defendant: Well I'll take it, I, I have no reason to uh, I mean, I have nothing to uh, hide.

Defendant was read his Miranda rights again and signed a polygraph consent form. After the exam was completed, the detective advised defendant that he failed the test. Upon hearing

the results, defendant made incriminating comments that his mouth might have unintentionally touched J.C.'s penis when he was tickling and wrestling and rolling around with him. Defendant agreed to write an apology letter to J.C. and stated he was "very sorry" and that he "never meant for that [oral contact] to happen." After completing the letter, defendant was arrested.

In his first point, defendant argues that he made an unequivocal request for counsel that the trial court erroneously characterized as ambiguous. We disagree and conclude that rather than invoking counsel, defendant merely sought advice from the detective.

An accused must be advised of his right to remain silent and to have a lawyer present, and if that right is asserted, it must be "scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 104 (1975). An accused that has expressed his desire to deal only with police through counsel may not be further interrogated until such counsel is present, "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). In New Jersey, "an equivocal request for an attorney is to be interpreted in a light most favorable to the defendant." State v. Chew, 150 N.J. 30, 63 (1997), overruled on other grounds, State v. Boretsky, 186 N.J. 271 (2006).

When an accused makes an ambiguous statement that may be construed as an assertion of his _Miranda_ rights, the police are permitted to ask follow up questions "designed to clarify the meaning of those words." _State v. Alston_, 204 N.J. 614, 623 (2011). Put another way, if "'following an equivocal indication of the desire to remain silent,' the police are reasonably unsure whether the suspect was asserting that right, they 'may ask questions designed to clarify whether the suspect intended to invoke his right to remain silent.'" _State v. Johnson_, 120 N.J. 263, 283 (1990) (quoting _Christopher v. Florida_, 824 F.2d 836, 841-42 (11th Cir. 1987)).

Under _Miranda_, such questioning aimed at clarification is "not considered 'interrogation' . . . because it is not intended to 'elicit an incriminating response from the suspect.'" _Johnson_, 120 N.J. at 283 (quoting _Christopher_, 824 F.2d at 842 n.16). "The rule permits only clarification, not questions that 'operate to, delay, confuse, or burden the suspect in his assertion of his rights. Because such questions serve to keep the suspect talking, not to uphold his right to remain silent, they constitute unlawful "interrogation," not permissible clarification.'" _Id._ at 283-84 (quoting _Christopher_, 824 F.2d at 842).

Defendant's claim that he unambiguously requested an attorney is belied by a review of the relevant exchange in its entirety,

as opposed to a truncated version in which words and phrases are improperly parsed. Only if we view the colloquy — "you wanna what?",[2] "a lawyer" — in complete isolation, and by consciously

_____

[2] We reviewed the same unredacted videotape considered by the trial court. After our review, we have concluded that the relevant colloquy between defendant and the detective represented in the transcript submitted by the parties on appeal is incorrect. The accurate colloquy reads:

> Defendant: But, I mean, I don't know if I have to have a lawyer?
>
> Detective: <u>You don't know what?</u>
>
> Defendant: A lawyer.

We acknowledge that the factual findings of a trial court in support of the grant or denial of a motion to suppress "must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" <u>State v. S.S.</u>, 229 N.J. 360, 374 (2017) (quoting <u>State v. Gamble</u>, 218 N.J. 412, 424 (2014)). In <u>S.S.</u>, the Court "cautioned that a trial court's factual findings should not be overturned merely because an appellate court disagrees with the inferences drawn and the evidence accepted by the trial court or because it would have reached a different conclusion." <u>Ibid.</u> Rather, absent findings that are "so clearly mistaken that the interests of justice demand intervention and correction," we should not disturb the factual findings of a trial court. <u>Ibid.</u> (quoting <u>Gamble</u>, 218 N.J. at 425).

Our independent review of the videotape does not alter our determination that defendant's statement was not an invocation of counsel, ambiguous or otherwise. In other words, whether the exchange included the phrase "you wanna what?" as reflected in the transcript or "you don't know what," defendant was not invoking his right to counsel but was clearly asking for advice. Thus, the trial court's incorrect factual finding on this point was not "so clearly mistaken that the interest of justice demand intervention and correction," <u>Ibid.</u> (quoting <u>Gamble</u>, 218 N.J. at 425), because it nevertheless correctly characterized defendant as asking the interrogating officer for "advice on whether he needed an attorney."

ignoring the previous statement, could one conclude the request for counsel was unambiguous. His initial statement — "But, I mean, I don't know if I have to have a lawyer?" — is presented as a question and evidences an attempt to seek advice from the detective on the necessity of counsel. The follow-up question and answer was connected to defendant's request for legal advice.

The relevant colloquy is similar to the permissible interrogation in Messino and Alston. In Messino, 378 N.J. Super. at 573, during a cigarette break, the defendant asked, "Do you think I need a lawyer?" The police officer advised defendant "that it was his responsibility to tell defendant that he had a right to have a lawyer, but 'that was his call.'" Not surprisingly, we found that defendant "merely asked" the interrogator if he needed a lawyer and that "[this] inquiry . . . may be distinguished from other statements considered to be requests for counsel." Id. at 578. We held the statement was not a request for counsel, ambiguous or otherwise, but was a mere request for advice.

In Alston, 204 N.J. at 618, the Court concluded defendant's statements, "Should I not have a lawyer in here with me?" and "No, I am asking you guys, man. I don't - I'm just - I see you guys, man," were not unambiguous requests for counsel. The Alston Court also concluded that the officer's immediate response — "That's on

- that's on you. If you want a lawyer, then we - stop and you going to get your lawyer. . . . If you want to stop at this time then we stop at this time." — was both a "fair recitation" of defendant's <u>Miranda</u> rights and "permissible clarification." <u>Id.</u> at 617-618, 628.

Again, defendant's statement — "But, I mean, I don't know if I have to have a lawyer?" — was posed as a mere question to the detective in an attempt to seek advice. While we recognize that an ambiguous request for counsel is "to be interpreted in a light most favorable to the defendant," <u>Chew</u>, 150 N.J. at 63, when we read the colloquy as a whole we cannot escape the conclusion that defendant's statement was not an invocation of counsel, ambiguous or otherwise. Further, the detective's immediate response — "That's up to you, I can't, I can't give you any kind of advice regarding that. . . ." — was an appropriate effort to explain to defendant that the detective could not advise whether counsel was necessary.

To the extent that defendant's statements may be viewed as an ambiguous invocation of his right to counsel, we agree with the trial court that the detective appropriately clarified defendant's request and did not impermissibly "delay, confuse, or burden" him. <u>Johnson</u>, 120 N.J. at 283. Without delay, the detective promptly advised defendant that she could not give him advice and indicated

that, if he was requesting a lawyer, he had to tell her. Simply, the lack of burden placed upon defendant is highlighted by the detective's sharp response that he had to tell her if he wanted to invoke his rights and obtain counsel. Further, the entire reason the detective was in the room with defendant was because he had voluntarily agreed to take the polygraph exam. Therefore, we conclude that during the relevant colloquy the detective did not implant or force the idea of the exam onto defendant. Rather, he had already expressed a willingness to take the exam and thus under these circumstances the detective's comments did not try to "delay, burden or confuse" his right to counsel.[3]

## II.

Defendant argues in Point II that (1) he did not voluntarily waive his right to take the polygraph, (2) the detectives coerced unreliable responses, and (3) the trial court's redaction of references to the polygraph in the recorded interrogation shown to the jury was in error. We disagree.

---

[3] We also observe that the detective's statement, "If you want a lawyer, then that's something that you'll have to tell me and then I'm not allowed to talk to you" is not a precise characterization of the Miranda warnings. But, in light of defendant having been previously Mirandized and clearly understanding and waiving his rights, we conclude this comment did not in any way confuse him. In this regard, we are mindful that "interrogating officers, when engaged in communications with suspects, most often use language that is also more like that of the suspect than the precise and pristine elocutions of the . . . Oxford don." Alston, 204 N.J. at 627.

A valid waiver requires the State to show beyond a reasonable doubt that the accused's waiver was "voluntary, knowing, and intelligent." State v. Hubbard, 222 N.J. 249, 265-67 (2015) (quoting State v. Hreha, 217 N.J. 368, 382 (2014)). An involuntary confession may result from physical or psychological coercion; however, "use of psychologically oriented interrogation techniques is not inherently coercive." State v. Cook, 179 N.J. 533, 562 (2004). Whether the State has shown beyond a reasonable doubt that a waiver was voluntary should be determined by assessing the "totality of the circumstances" which "includ[es] both the characteristics of the defendant and the nature of the interrogation." State v. Galloway, 133 N.J. 631, 654 (1993). Further, relevant factors in making this determination include "the suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved." Ibid. Courts should also consider "defendant's previous encounters with law enforcement" and the period of time that has elapsed between the administration of Miranda rights and the defendant's confession. Hreha, 217 N.J. at 383.

First, defendant argues that he did not intelligently waive his right to silence prior to the polygraph exam. His contention

is based upon his conversation with the detective as she was setting up the polygraph exam and after he waived his <u>Miranda</u> rights where he asked, "If I don't take this test . . . what is my next step, am I just automatically guilty?"  The interrogator responded "I don't know," and offered to get the detective working on the case to come talk to defendant.  Defendant declined but continued asking what other options he had if he walked out of the interrogation room, leading the interrogator to state that, if he left the room, his name would not be cleared and that it would make J.C.'s story "more believable."  Defendant then decided to take the polygraph.

Defendant relies on <u>State v. Pillar</u>, 359 N.J. Super. 249, 268 (App. Div. 2003), where we held that the defendant's <u>Miranda</u> waiver was not valid because the officer's "acquiescence to hear an 'off-the-record' statement" from the defendant, which the officer knows cannot be "off-the-record," "totally undermines and eviscerates the <u>Miranda</u> warnings."  But, here, the detective responded to defendant's inquiry that she did not know if he would be automatically guilty because she was not the detective working on the case.  Thus, the detective did not make any affirmative assertions that defendant would be guilty if he did not take the polygraph exam and did not attempt to undermine defendant's <u>Miranda</u>

warnings.  Also, defendant understood that he did not have to take the test when he stated "I want to know what options I have if . . . I was to just walk out of here."

Second, defendant contends that the detective coerced unreliable responses from him by "confronting him with a fabrication[] [of] scientifically-certain proof of guilt."  Our Supreme Court has recognized the questionable reliability and accuracy of polygraph tests.  See State v. A.O., 198 N.J. 69, 83-84 (2009); see also State v. Domicz, 188 N.J. 285, 313 (2006) (recognizing that "serious questions about the reliability of polygraph evidence remain").  Here, defendant takes issue with the detective's statements that polygraphs are a "scientific instrument" that is "97% accurate" and that his nervousness would not impact the test.

We disagree with defendant's attempt to compare the present matter to cases where the police fabricated tangible evidence to elicit a confession.  See State v. Chirokovskcic, 373 N.J. Super. 125, 129, 133-34 (App. Div. 2004) (upholding suppression of confession on the basis of coercion because the police fabricated a laboratory report to fictitiously indicate the defendant's DNA was found at the crime scene); State v. Patton, 362 N.J. Super. 16, 18, 49 (App. Div. 2003) (holding the defendant was coerced when the police fabricated an audio tape depicting a fake eye-

witness to the crime). The detective here did not fabricate the results of the polygraph test. Defendant simply failed the test and the results were used to show that he was not being truthful in the interrogation. See State v. R.T., 411 N.J. Super. 35, 45-46 (App. Div. 2009) (finding that "the specific use of the voice stress analyzer to point out to defendant that it appeared he was not being entirely candid in his denial of the allegations, does not rise to the level of trickery by resorting to fabricated evidence of the type that we disapproved in [Patton, 362 N.J. Super. at 31-49]").[4]

---

[4] A survey of the case law outside of New Jersey supports the actions of the police here. See Mastin v. Senkowski, 297 F. Supp. 2d 558, 603-04 (W.D.N.Y. 2003)(finding an officer's misrepresentation that the polygraph machine was "95 percent accurate" did not make the defendant's confession involuntary because the law allows police to make false statements, the defendant failed to establish the officer lied about the polygraph results); People v. Mays, 174 Cal. App. 4th 156, 166 (Cal. Ct. App. 2009)(disregarding defendant's belief that "polygraphs are 100 percent accurate" because "the belief was not induced by the police"); Contee v. United States, 667 A.2d 103, 104 (D.C. 1995)(stating that, when using tests such as polygraphs, the police's failure to "explain[] that the test results are not conclusive" does not mean the confession is involuntary unless the defendant shows the deception was "unfair to the extent that his due process was denied"); State v. Stone, 303 P.3d 636, 645 (Idaho Ct. App. 2013)(determining the detective's statement, after defendant took the exam, that "polygraph examinations were one-hundred percent accurate" did not make the defendant's statements involuntary because the detective did not make legal misrepresentations or threaten defendant with a greater crime for lying to police); State v. Underhill, 346 P.3d 1214, 1217 (Or. Ct. App. 2015)(finding the defendant's statements in the context of the polygraph exam process were voluntary and not the product of

Also, in assessing the voluntariness of defendant's statement, the trial court considered the nature of the investigation: defendant was informed "nobody could force him to take" the polygraph; the door in the interrogation room was unlocked and defendant was free to leave at any time; he was told he was not under arrest; defendant was given multiple breaks, allowed trips to the bathroom, and water to drink. The balance of these factors establish that defendant was not subjected to substantial psychological pressure during interrogation. See Cook, 179 N.J. at 563. Because defendant's free will was not overborne based on a totality of the circumstances, his inculpatory statements were correctly determined by the trial court to be voluntary.

Finally, while defendant agrees with the polygraph's inadmissibility, he argues that it was prejudicial for the jury to be instructed to assess the reliability of his inculpatory statements without knowledge of the detective's use of the failed polygraph. However, because we find that defendant's statements were voluntarily given, there was no coercive intervening event that the jurors needed to be informed about and the trial court did not err in excluding all references to the polygraph.

_____

unlawful police conduct, despite the officer telling defendant the polygraph was "97.3 percent accurate" prior to taking the test).

18                                              A-0359-15T3

III.

We agree, however, with defendant's contention in Point III that the trial court should have charged the jury on the second-degree sexual assault charge. The trial court's refusal — because it would be "a violation of double jeopardy" — was contrary to State v. Villar, 150 N.J. 503, 518 (1997) and State v. Short, 131 N.J. 47, 62-63 (1993), and warrants reversal.

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). Pursuant to N.J.S.A. 2C:1-8(e), the court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Accordingly, when a defendant's request to instruct the jury on a lesser-included offense is denied, "an appellate court reviews the denial of that request, determining whether 'the evidence presents a rational basis on which the jury could [1] acquit the defendant of the greater charge and [2] convict the defendant of the lesser.'" State v. Carrero, 229 N.J. 118, 128 (2017) (quoting State v. Brent, 137 N.J. 107, 117 (1994)). If a rational basis exists, "a trial court's failure to give the requested instruction is reversible error." Ibid.

In Short, 131 N.J. at 63, the Court upheld a defendant's right for a jury to consider a lesser-included offense despite the

19                                                    A-0359-15T3

fact that the offense was barred by the applicable statute of limitations. In that case, the trial court granted defendant's request for a jury instruction on the lesser-included offense of manslaughter but told the jury over defendant's objection that if it found the defendant guilty of manslaughter, the defendant would be acquitted as the statute of limitations had run on that offense. Id. at 51. Defendant appealed after he was convicted of murder, arguing that the instructions on the lesser-included offenses should not have been accompanied by warnings that he would be acquitted. Id. at 51.

The Court reversed our affirmance of the conviction and held that the defendant was entitled "to have the jury instructed on all lesser[-]included offenses supported by the record," without warnings about the sentencing outcome and further held that a defendant had a right "not to be convicted of a crime whose statute of limitations had passed" and these rights were not "conditioned on the relinquishment of the other." Id. at 52.

In Villar, 150 N.J. at 508, a jury found a defendant guilty of second-degree aggravated assault but acquitted the defendant on third-degree aggravated assault. We vacated the second-degree aggravated assault conviction and held that there be no retrial on the second-degree charge "because the jury acquitted defendant on the third-degree charge . . . this lesser-included offense

cannot be charged at retrial, thus hindering a fair retrial of the greater offense." Id. at 517.

The Court reversed and ordered a retrial on the second-degree charge. Id. at 518-19. Providing guidelines for the retrial, the Court acknowledged the double jeopardy implications of its decision:

> We realize that, because of the constitutional prohibition against double jeopardy, defendant cannot be recharged with or convicted of the third-degree aggravated assault. However, at defendant's request, the jury could be charged with that offense as a lesser-included offense of second-degree aggravated assault and should the jury return a verdict of guilt on that count, defendant would stand acquitted.
>
> [Id. at 518.]

The State maintains that Villar is inapplicable because count two is not a lesser-included offense to count one as the culpability requirement for second-degree sexual assault charge is higher than for first-degree aggravated sexual assault. It is unnecessary to resolve this point because the State applies the wrong legal standard.

When a defendant requests a charge on a lesser-included offense, the inquiry focuses on rationality: "whether the lesser offense is strictly 'included' in the greater offense, as defined by N.J.S.A. 2C:1-8d, is less important to a trial court's determination to charge the offense than whether the evidence

presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser." Brent, 137 N.J. at 117. A low threshold is set by the rational-basis test. State v. Crisantos, 102 N.J. 265, 278 (1986). "A defendant is entitled to a lesser-included offense instruction rationally supported by the evidence, even if the instruction is inconsistent with the defense theory." Carrero, 229 N.J. at 128. "[O]ur Court has determined that failure to instruct the jury at the defendant's request on a lesser charge for which the evidence provides a rational basis warrants reversal of the defendant's conviction." Brent, 137 N.J. at 118.[5]

Here, there was evidence in the record that provided a rational basis for including the lesser-included charge. Indeed, the police and J.C.'s parents testified that J.C. told them defendant bit or put his penis in defendant's mouth. However at trial, J.C. testified that defendant touched his penis with his hand, not his mouth. This provided a rational basis for the jury to have convicted defendant on the lesser sexual assault charge if it did not believe defendant put J.C.'s penis in his mouth but instead touched it with his hand. Compare N.J.S.A. 2C:14-2(a)(1)

_____

[5] Additionally, we note that we have previously characterized second-degree sexual contact as a lesser offense than first-degree aggravated sexual assault. See State v. Ramos, 226 N.J. Super. 339, 340 (App. Div. 1988); State v. J.S., 222 N.J. Super. 247, 250 (App. Div. 1988).

(a person is guilty of aggravated sexual assault "if he commits an act of sexual penetration with another person . . . [under] 13 years old") with N.J.S.A. 2C:14-2(b) (a person is guilty of "sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim"). Accordingly, the trial court's refusal to charge the jury consistent with Short and Villar was reversible error.

IV.

Defendant next argues in Point IV that the trial court improperly admitted five out-of-court statements from the victim, his parents, a detective, and a child abuse pediatrician. Defendant contends the statements were inadmissible hearsay, cumulative, and should have been excluded under N.J.R.E. 403. We affirm the challenged evidentiary rulings with two exceptions which we address for purposes of the remanded proceedings.

A trial court's evidentiary rulings are "entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). Unless the trial court "was so wide of the mark that a manifest denial of justice resulted," we may not substitute our

judgment for that of the trial court. <u>Marrero</u>, 148 N.J. at 484 (quoting <u>State v. Kelly</u>, 97 N.J. 178, 216 (1984)).

The trial court admitted J.C.'s recorded statement, his statements to his parents, and to the detective pursuant to N.J.R.E. 803(c)(27), which permits the admissibility of out-of-court statements made by children relating to a sexual offense.[6] We conclude based on our review of the trial record that: (1) J.C.'s father's testimony about what the victim told him — that defendant bit his "peepee"; (2) the detective's testimony about J.C.'s statements to his mother at the police station; (3) the victim's own recorded statement given at the police station; and (4) J.C.'s mother's testimony about his out-of-court statements to her in their home were clearly admissible in accordance with N.J.R.E. 803(c)(27) as all three prongs of the Rule were satisfied. We find defendant's arguments challenging the admissibility of this evidence to be without merit and not warranting extended discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

---

[6] Statements made out-of-court by a child under the age of 12 relating to sexual misconduct committed with or against the child are admissible if (1) the opposing party is on notice; (2) the court finds there is a probability that the statement is trustworthy, and (3) the child testifies at the proceeding, or the child is unavailable as a witness and there is corroborating admissible evidence. N.J.R.E. 803(c)(27).

Defendant also argues the testimony of the child abuse pediatrician, who was also qualified as an expert, was improperly admitted under N.J.R.E. 803(c)(4), which deems admissible "[s]tatements made in good faith" for the "purposes of medical diagnosis or treatment," because the statements made by the victim to the pediatrician were not relevant to diagnosis or treatment. Specifically, the pediatrician testified that J.C. stated during her examination that "he bit here" and "pointed to his penis." We find no abuse of discretion in the trial court's admission of this testimony under N.J.R.E. 803(c)(4) because our review of the record confirms that J.C.'s statements occurred when he was brought to the pediatrician for the purpose of treatment as a result of the alleged sexual assault and not evidence gathering. Cf. In the Interest of C.A., 201 N.J. Super. 28, 33-34 (App. Div. 1985) (doctor's testimony pertaining to a child's statements regarding alleged abuse inadmissible because the doctor was consulted for evidence gathering purposes).

Finally, defendant's reliance upon State v. E.B., 348 N.J. Super. 336 (App. Div. 2002) for the proposition that prejudicial "extra weight" was afforded to J.C.'s allegations based on the number of admitted out-of-court statements of abuse is misplaced.

In E.B., 348 N.J. Super. at 338, 346, the trial court excluded testimony of a vital defense witness allowing only the defendant

to testify on his behalf but permitting the State to present five witnesses who testified pursuant to N.J.R.E. 803(c)(27). In that case, although we cautioned about the "extra weight" that may be given when multiple witnesses testify to abuse, our criticism was not directed to the prosecution's use of multiple witnesses but rather the trial court's failure to give a "modicum of compensatory liberality to [the] defendant in the presentation of his proofs." Id. at 346. Here, the jury heard the child's version multiple times but unlike in E.B., defendant was not denied testimony of a vital witness to his case. Under these circumstances we find no reason to conclude that the trial court abused its discretion in determining that the probative value of the multiple out-of-court statements was not "substantially outweighed" by the risk of "undue prejudice" or the "presentation of cumulative evidence." N.J.R.E. 403.

However, the trial court permitted over defendant's objection the testimony of the treating child abuse pediatrician that during the history portion of J.C.'s examination his mother informed her "there was oral genital contact." The trial court admitted the testimony pursuant to N.J.R.E. 803(c)(4) concluding the hearsay was "reasonable." While the child's statements were clearly admissible, it was error to permit the treating pediatrician to channel the child's statement through the cumulative hearsay

26                                                           A-0359-15T3

statement of his mother for the stated purpose of treatment or diagnosis.

Similarly, although the trial court properly sustained defendant's objection and precluded the pediatrician from testifying about where in the home the alleged abuse took place as clearly unrelated to medical diagnosis or treatment, the witness was nevertheless permitted to testify regarding the movie that J.C. was watching during one of the encounters. We conclude that such a corroborative fact should not have been admitted through the doctor as it was irrelevant to treatment or diagnosis and was cumulative of other evidence. Because we are reversing the conviction on other grounds, we need not determine if the erroneous introduction of this evidence resulted in a manifest denial of justice. That error, however, should not be repeated in any future proceedings in this case.

### V.

Finally, we reject defendant's collateral estoppel argument in Point V and find it to be without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). We provide only these brief comments.[7]

---

[7] The collateral estoppel issue was not raised before the trial court directly. Rather, it was framed by defendant as a double jeopardy argument. Applying either the plain error or harmless error standard, Rule 2:10-2, we conclude the trial court committed

Defendant maintains that because the first jury acquitted him on count two, it definitively determined that he had not acted "purposely" and thus the State was barred from litigating that issue at the second trial. Defendant's argument, however, rests on an incorrect assumption regarding the first jury's verdict and a mischaracterization of the subsequent trial proceedings.

While it is true that the first jury acquitted defendant on count two, which has a "purposeful" mens rea element, the definition of "sexual contact" under that count requires the defendant to commit sexual contact for the specific purpose of "degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-1(d). Thus, as the State correctly observes, it is equally as possible that the first jury acquitted defendant on count two because they did not believe he acted with these motivations. Nevertheless, even if we were to assume that the jury found that defendant did not have a "purposeful" mental state, we are satisfied after our review of the trial record that the prosecution in its pursuit of a conviction for counts one and three, did not attempt to argue that defendant acted purposefully and thus the proscriptions against re-litigating a previously decided issue addressed in Ashe v.

no error on this point, let alone any that produced an unjust result.

<u>Swenson</u>, 397 U.S. 436, 444 (1970) and <u>State v. Cormier</u>, 46 N.J. 494 (1966) are inapplicable here.

Unlike in <u>Ashe</u>, a fair reading of the record in the second trial fails to support defendant's assertion that the State was re-litigating an issue addressed previously — the acquitted charge of sexual contact. The essence of defendant's allegations that the State re-litigated the mental culpability issue stems from statements made during the prosecutor's closing, which defendant characterizes as arguments in favor of purposeful action. Yet, defendant was not re-indicted on "purposeful" sexual contact nor was the jury given instruction that the State had to prove "purposeful" intent. Further, to convict defendant for aggravated sexual assault under N.J.S.A. 2C:14-2(a)(1), the State only needed to prove that defendant acted "knowingly." In this regard, the prosecution repeatedly emphasized the word "knowledge" and that defendant "knew what he was doing" during closing argument.

Affirmed in part, reversed in part and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION